**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| RICHARD LEBLANC, | : | Case No. 1:11-cv-06983 (KPF) |
| Plaintiff, | : | |
| v. | : | (Document Filed Electronically) |
| UNITED PARCEL SERVICE, INC., | : | |
| Defendant. | : | |
| | : | |

---

## DEFENDANT UNITED PARCEL SERVICE, INC.'S BRIEF
## IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

---

DAY PITNEY LLP
*Attorneys for Defendant*
*United Parcel Service, Inc.*
7 Times Square
New York, NY 10036
(212) 297-5800

On the brief:

Heather Weine Brochin, Esq.
Joseph C. Nuzzo, Jr., Esq.

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .................................................................................1

PROCEDURAL HISTORY ...................................................................................1

STATEMENT OF FACTS ....................................................................................2

    A.    Plaintiff's Employment...........................................................................2

    B.    Plaintiff's Alleged Medical Condition and Transfer ....................................2

    C.    Plaintiff's Alleged Subsequent Transfer Request ......................................3

    D.    Plaintiff's Falsification of Training Records...............................................4

    E.    Plaintiff's Mishandling of U.S.P.S. Packages..........................................5

LEGAL ARGUMENT ........................................................................................6

I.    Standard for Summary Judgment .....................................................................7

II.    Plaintiff's Disability Discrimination Claim Fails as a Matter of Law ...........................8

    A.    Plaintiff Cannot Establish a Prima Facie Case of Disability Discrimination ................8

    B.    UPS Had a Legitimate Non-Discriminatory Reason for Terminating Plaintiff............10

    C.    Plaintiff Cannot Show UPS's Legitimate Business Reason for Terminating Him Is a Pretext for Discrimination ...............................................11

        1.    Plaintiff's Disparate Treatment Claim Must Fail......................................12

III.    Plaintiff's Failure to Accommodate Claim Fails as a Matter of Law...............................16

    A.    Plaintiff Cannot Prove a Prima Facie Case for Failure to Accommodate ....................16

        1.    Plaintiff's Disability Discrimination Claim Also Fails Because He Never Identified a Suitable Job to Which He Could have Transferred ...............................17

    B.    Plaintiff Was Provided with a Reasonable Accommodation ........................................19

IV.    Plaintiff's Claim for Retaliation Fails as a Matter of Law ...............................................20

    A.    Plaintiff Did Not Engage in a Protected Activity.......................................................21

    B.    Plaintiff Cannot Satisfy the Elements of a Prima Facie Case .....................................22

    C.    UPS Had a Legitimate Non-Discriminatory Reason for Terminating Plaintiff............24

V.    Some of Plaintiff's Claims are Time-Barred Under the NYCHRL ....................................24

VI.    Plaintiff is Barred From Requesting Punitive Damages....................................................25

CONCLUSION.......................................................................................................25

## TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Aka v. Jacob K. Javits Convention Center of N.Y.*,
   No. 09-cv-8195, 2011 U.S. Dist. LEXIS 114002 (S.D.N.Y. Sept. 30, 2011) ..........................9

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242, 106 S. Ct. 2505 (1986) ................................................................................7

*Bresloff-Hernandez v. Horn*,
   No. 05-cv-0384, 2007 U.S. Dist. LEXIS 71257 (S.D.N.Y. Sept. 21, 2007) ....................16, 17

*Brice v. New York State Department of Health*,
   901 N.Y.S.2d 898 (N.Y. App. Div. 2009) ..........................................................................18

*Brown v. Pension Boards*,
   488 F. Supp. 2d 395 (S.D.N.Y. 2007) ................................................................................11

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) .........................................................................................................7, 8

*Chao v. Mount Sinai Hosp.*,
   476 F. App'x 892 (2d Cir. 2012) ........................................................................................12

*Davis-Bell v. Columbia University*,
   851 F. Supp. 2d 650 (S.D.N.Y. 2012) ................................................................................14

*Ferraro v. Kellwood Co.*,
   440 F.3d 96, 99-100 (2d Cir. 2006).......................................................................................8

*Fincher v. Depository Trust & Clearing Corp.*,
   604 F.3d 712, 720-723 (2d Cir. 2010)...........................................................................21, 22

*Fitzpatrick v. New York Cornell Hospital*,
   No. 00-cv-8594, 2002 U.S. Dist. LEXIS 25166 (S.D.N.Y. Jan. 9, 2003).............................15

*Graves v. Finch Pruyn & Co.*,
   457 F.3d 181 (2d Cir. 2006) ........................................................................................16, 18

*Hart v. New York University Hospitals Center*,
   No. 09-cv-5159, 2011 U.S. Dist. LEXIS 116538 (S.D.N.Y. Oct. 7, 2011) ..........................17

*James v. New York Racing Association*,
   233 F.3d 149 (2d Cir. 2000) ........................................................................................11, 12

84864846.7

## <u>TABLE OF AUTHORITIES (CONT.)</u>

**Cases**                                                                                                   **Page(s)**

*Jimoh v. Ernst & Young*,
  908 F. Supp. 220 (S.D.N.Y. 1996)....................................................................15

*Kassner v. 2nd Ave. Delicatessen, Inc.*,
  496 F.3d 229 (2d Cir. 2007) .........................................................................24

*Kaur v. New York City Health & Hospitals Corp.*,
  688 F. Supp. 2d 317 (S.D.N.Y. 2010) .................................................. 12, 13, 15

*Kemp v. Metro-North Railroad*,
  316 F. App'x 25 (2d Cir. 2009) ......................................................................20

*Krikelis v. Vassar College*,
  581 F. Supp. 2d 476 (S.D.N.Y. 2008) .......................................................... 19, 20

*Mayers v. Emigrant Bancorp, Inc.*,
  796 F. Supp. 2d 434 (S.D.N.Y. 2011) ..............................................................22

*Milne v. Navigant Consulting, Inc.*,
  No. 08-cv-8964, 2012 U.S. Dist. LEXIS 114005 (S.D.N.Y. Aug. 13, 2012) ................ 22, 23

*Missick v. City of New York*,
  707 F. Supp. 2d 336 (E.D.N.Y. 2010) ...............................................................16

*Murray v. Visiting Nurse Services*,
  528 F. Supp. 2d 257 (S.D.N.Y. 2007) ...............................................................23

*Nixon-Tinkelman v. New York City Department of Health*,
  No. 10-3317-cv, 2011 U.S. App. LEXIS 16569 (2d Cir. Aug. 10, 2011)..........................16

*O'Connor v. Smith & Laquercia, LLP*,
  No. 08-cv-4559, 2010 U.S. Dist. LEXIS 94088 (E.D.N.Y. Sept. 9, 2010)..........................19

*Pearson v. Unification Theol. Seminary*,
  785 F. Supp. 2d 141, 163 (S.D.N.Y. 2011) .......................................................8, 9

*Pilgrim v. McGraw-Hill Companies*,
  599 F. Supp. 2d 462 (S.D.N.Y. 2009) ..............................................................21

*Pimentel v. Citibank, N.A.*,
  29 A.D.3d 141 (N.Y. App. Div. 2006) ..........................................................18, 19

*Ponticelli v. Zurich American Insurance Group*,
  16 F. Supp. 2d 414 (S.D.N.Y. 1998) ................................................................10

## <u>TABLE OF AUTHORITIES (CONT.)</u>

**Cases** **Page(s)**

*Ragin v. East Ramapo Central School District,*
   No. 05-cv-6496, 2010 U.S. Dist. LEXIS 32576 (S.D.N.Y. Mar. 31, 2010)...........17

*Rambacher v. Bemus Point Central School District,*
   307 F. App'x 541 (2d Cir. 2009) .........................................................................8

*Saunders v. New Horizons Computer Learning Center,*
   No. 99-cv-9532, 2002 U.S. Dist. LEXIS 9495 (S.D.N.Y. May 29, 2002)............11

*Scheiner v. Wallace,*
   No. 93-cv-0062, 1996 U.S. Dist. LEXIS 9843 (S.D.N.Y. July 11, 1996) ............25

*Sealy v. Hertz Corp.,*
   688 F. Supp. 2d 247 (S.D.N.Y. 2009) .......................................................... 12, 15

*Sista v. CDC Ixis North America, Inc.,*
   445 F.3d 161 (2d Cir. 2006) .............................................................................11

*Smith v. Regional Plan Association, Inc.,*
   No. 10-cv-5857, 2011 U.S. Dist. LEXIS 117712 (S.D.N.Y. Oct. 7, 2011) ............9

*Stuevecke v. N.Y. Hospital Medical Center of Queens,*
   No. 01-cv-326, 2003 U.S. Dist. LEXIS 14793 (E.D.N.Y. Aug. 26, 2003)............24

*Sutera v. Schering Corp.,*
   73 F.3d 13 (2d Cir. 1995) ................................................................................10

*Timbie v. Eli Lilly & Co.,*
   429 F. App'x 20 (2d Cir. 2011) ...........................................................................7

*Vinokur v. Sovereign Bank,*
   701 F. Supp. 2d 276 (E.D.N.Y. 2010).................................................................20

*Witkowich v. Gonzales,*
   541 F. Supp. 2d 572 (S.D.N.Y. 2008).................................................................15

*Woodman v. WWOR-TV, Inc.,*
   411 F.3d 69 (2d Cir. 2005) ...............................................................................23

84864846.7

<u>**TABLE OF AUTHORITIES (CONT.)**</u>

**Statutes**            **Page(s)**

N.Y. City Admin. Code § 8-102 (16)(a) (2013) ............................................................... 8

N.Y. City Admin. Code § 8-107(7) ................................................................................. 21

N.Y. City Admin. Code § 8-126(a) ................................................................................. 25

N.Y. City Admin. Code § 8-502(d) ................................................................................. 24

**Rules**

Fed. R. Civ. P. 56(a) ........................................................................................................ 7

Fed. R. Civ. P. 56(c) ........................................................................................................ 7

Fed. R. Civ. P. 56(e) ........................................................................................................ 7

84864846.7

## PRELIMINARY STATEMENT

Richard LeBlanc ("plaintiff") is a former supervisor for defendant United Parcel Service, Inc. ("UPS") who was terminated on April 21, 2011 for dishonesty after he: (1) admittedly falsified OSHA-required hazardous material ("haz-mat") training records and examinations and (2) improperly dropped off U.S. Postal Service ("U.S.P.S.") packages next to a post office mailbox in the Bronx in the middle of the night. In his Complaint, however, plaintiff alleges that he was actually fired because of alleged accommodation requests that he claims to have made, which, according to plaintiff, were ignored. These allegations are meritless.

Plaintiff has not – and cannot – present any evidence that anyone involved in the decision to terminate his employment possessed any knowledge of his alleged disability or of any alleged accommodation request. Furthermore, plaintiff admits that he never completed the appropriate paperwork under UPS's accommodation or transfer policy. He also admits that UPS satisfied his alleged need for accommodation – more time to exercise for his alleged heart condition – when it transferred him to a position that allowed him to work one to two hours less per day. Thus, plaintiff cannot succeed on his failure to accommodate claim, and he has no evidence to demonstrate that his termination was motivated by anything other than his admitted dishonesty and misconduct.

## PROCEDURAL HISTORY

Plaintiff filed the Complaint in the United States District Court for the Southern District of New York on October 5, 2011 against UPS. (Affirmation of Heather Weine Brochin ("Brochin Aff.") Exh. A). Because the Complaint failed to adequately allege diversity jurisdiction, plaintiff filed an Amended Complaint (referenced hereinafter as the "Complaint") on November 4, 2011. (Brochin Aff. Exh. B). On January 20, 2012, UPS answered plaintiff's

Complaint. (Brochin Aff. Exh. C). Discovery concluded following the August 8, 2013 deposition of Daniel Minesinger, and the case is now ripe for summary judgment.

**STATEMENT OF FACTS**

**A.     Plaintiff's Employment**

In April 1992, UPS hired plaintiff as a helper. (LeBlanc Dep. 10:18-23).[1] Several months later, he was promoted to a full-time package car driver. (LeBlanc Dep. 10:24-11:14). In February 2001, he was promoted to an On-Road Supervisor, a position in which he was responsible for supervising package car drivers. (LeBlanc Dep. 14:20-15:4). Plaintiff testified that, in this position, he worked approximately thirteen to fourteen hours per day, beginning at approximately 6:00 A.M. each morning. (LeBlanc Dep. 16:20-17:5).

During the relevant period of plaintiff's employment, he worked at or out of the UPS facility on Brush Avenue in the Bronx, New York and lived in Newtown, Connecticut, approximately one hour and ten minutes away. (LeBlanc Dep. 19:16-22).

**B.     Plaintiff's Alleged Medical Condition and Transfer**

Plaintiff allegedly suffered a heart attack in May 2007 and was on a leave of absence for a period of a few months. (LeBlanc Dep. 32:17-33:3; 33:18-23). At the time he returned to work, he resumed his job as an On-Road Supervisor and worked, according to him, the same hours as before his heart attack. (LeBlanc Dep. 37:8-20).

During the course of this litigation, plaintiff produced a letter from his cardiologist dated February 12, 2008. (Brochin Aff., Exh. E). The letter states that plaintiff needed to exercise for his condition and claims that "he would be able to exercise if he saved some time on his

---

[1]     The cited portions from the transcript of Richard LeBlanc's April 19, 2012 deposition are attached to the accompanying Brochin Affirmation as Exh. D.

-2-

commute to work." (*Id.*). Plaintiff testified at his deposition that he provided a copy of this letter to a UPS employee named Yvonne Quinones in February 2008. (LeBlanc Dep. 126:4-13).[2]

Thereafter, in May 2008, UPS transferred plaintiff to a position as a Preload and Dispatch Supervisor ("PDS") in the package center. (LeBlanc Dep. 38:4-16). This position involved supervising package center employees who are responsible for handling the nightly sorting and distribution of packages in the center. (LeBlanc Dep. 47:23-48:3). In the PDS role, plaintiff worked a shorter workday of approximately twelve hours per day -- one to two hours less each day than his prior position. (LeBlanc Dep. 49:3-9). The reduction in hours associated with this position, therefore, provided plaintiff with the additional time he needed to exercise for his alleged heart condition, though plaintiff claims that he used the additional time at home during the day to attend his children's sporting events instead. (LeBlanc Dep. 121:24-122:2; 123:5-14).

### C.    Plaintiff's Alleged Subsequent Transfer Request

Despite his May 2008 transfer to a position that provided him an additional one to two hours per day to exercise, plaintiff alleges that he returned to his doctor on three or four occasions to get another copy of the same February 12, 2008 letter and continued showing it to certain individuals at UPS in hopes of receiving a transfer closer to his home.[3] (LeBlanc Dep. 132:15-20; 133:8-13; 167:2-23). He identifies certain individuals to whom he claims to have

---

[2]    While UPS accepts as true the factual allegations plaintiff has made for purposes of this motion only, UPS notes that it has no record of receiving this letter or of any accommodation request by plaintiff.

[3]    Defendant notes that, while it must accept as true for purposes of this motion, Dr. Kramer's office has no record of reprinting this note, as alleged by plaintiff, at any point between its creation on February 12, 2008 and April 27, 2011, six days *after* plaintiff's termination. (*See* Brochin Aff. Exh. F).

-3-

shown the February 2008 letter in or around March 2009, February 2010, and February 2011. (LeBlanc Dep. 115:16-23; 126:4-13; 132:23-133:10; 141:4-12; 167:2-13).

Plaintiff claims that the stress of commuting and working at night negatively impacted his health. (LeBlanc Dep. 116:13-117:20). The letter does not address either "stress" associated with plaintiff's commute or issues with plaintiff working at night. (Brochin Aff. Exh. E). Instead, the letter states that a reduction in plaintiff's commute would allow him more time to exercise. (Brochin Aff. Exh. E). Notably, the letter is dated a few months prior to plaintiff's transfer to the PDS position, which resulted in a shortened workday affording plaintiff more time at home to exercise.[4] (LeBlanc Dep. 121:19-122:4). UPS's Occupational Health group, which manages accommodation matters, has no record of receiving this February 2008 letter. (Rowan Decl. ¶¶4-5). Plaintiff also admittedly never reviewed or filled out any of the paperwork required under UPS's transfer policy to request a transfer, despite knowing how to access such policies on UPS's intranet portal.[5] (LeBlanc Dep. 296:15-17; 110:10-16). He also never inquired as to whether or not there were any available positions at UPS facilities closer to his home and admittedly has no knowledge of any open positions. (LeBlanc Dep. 151:6-19).

    **D.**    <u>**Plaintiff's Falsification of Training Records**</u>

    1.    In March 2011, UPS's Brush Ave. facility was preparing for an audit by an outside vendor of its safety training records required by the Occupational Health and Safety Administration ("OSHA"). (LeBlanc Dep. 91:20-92:12). The audit would verify that UPS

---

[4]    Plaintiff admitted at his deposition that he was home for approximately 10 hours per day but did not make time to exercise during those hours. (LeBlanc Dep. 122:5-123:4).

[5]    As a supervisor at UPS, plaintiff was admittedly responsible for properly directing employees who came to him regarding accommodation inquiries. (LeBlanc Dep. 22:8-19). He also had access to UPS's accommodation and transfer policies. (LeBlanc Dep. 110:7-16).

-4-

conducts appropriate safety training of its employees at the facility and maintains required documentation of the training. (LeBlanc Dep. 92:19-93:1). Prior to the audit, the safety managers for the facility sought to collect any outstanding records to ensure that the facility was in compliance with its OSHA obligations. (LeBlanc Dep. 91:20-92:12; 98:6-12). Following the audit, UPS identified misconduct with respect to the audit, including irregularities in paperwork that was submitted just prior to the audit. (Minesinger Dep. 44:19-22; 48:20-49:19).[6] Plaintiff had submitted some of the paperwork about which concerns were raised based upon similarities in the handwriting on the document. (Minesinger Dep. 67:7-16; 44:19-22).

During the investigation, plaintiff admitted, in a handwritten statement, to forging attendance records for seven of his direct reports in connection with hazardous material training classes in which they were required to participate. (LeBlanc Dep. 93:9-12; 96:13-97:5; Brochin Aff. Exh. H). Plaintiff also admitted to taking tests related to the hazardous material class in their names. (LeBlanc Dep. 89:20-90:8; Brochin Aff. Exh. H). In his statement, plaintiff wrote:

> I Richard LeBlanc falseafied (sic) the hazmat sign off sheets and test because Ketter (sic) was coming and they were overdue. I signed there (sic) names and did the test. This was the first time that I had done this. I planed (sic) on doing them over this week but have been on the belt because we been (sic) really crazy. Know (sic) one knew I did this. I took it upon myself to do it.

(Brochin Aff. Exh. H). Plaintiff even attempted to make the handwriting for each of the employees look different as he fabricated the tests and rosters. (LeBlanc Dep. 90:16-23).

### E.    Plaintiff's Mishandling of U.S.P.S. Packages

In addition to his misconduct with respect to the hazardous material training class records, prior to the OSHA audit, plaintiff improperly dropped off approximately 75 to 100

---

[6]    The cited portions from the transcript of Daniel Minesinger's August 8, 2013 deposition are attached to the accompanying Brochin Affirmation as Exh. G.

U.S.P.S. packages next to a U.S.P.S. mailbox on a street in the Bronx at approximately 2:00 A.M. or 3:00 A.M. (LeBlanc Dep. 53:3-8; 62:7-11; Brochin Aff. Exh. I). These were packages that were regularly co-mingled in trailers received by UPS that needed to be delivered to the U.S.P.S. (LeBlanc Dep. 53:22-55:4). Rather than taking them to the various post offices in the Bronx, on more than one occasion, plaintiff admittedly left the packages in a pile next to a mailbox. (LeBlanc Dep. 74:21-75:13; Brochin Aff. Exh**.** I). He admitted to this misconduct in a handwritten statement. (*Id.*) His conduct violated UPS policy. (Minesinger Dep. 68:16-69:2).

Newspapers articles reported the "mysterious" appearance of packages "in the middle of the night" next to a post office mailbox. (LeBlanc Dep. 73:10-24; Brochin Aff. Exh. J). In addition, according to the newspaper accounts, the U.S.P.S. launched an investigation into the incident. (Brochin Aff. Exh. J).

Following UPS's investigation of these incidents, plaintiff was terminated for dishonesty and violating UPS policy. (Minesinger Dep. 96:8-12). The individual responsible for recommending plaintiff's termination, Daniel Minesinger, the former District Human Resources Manager, had no knowledge of plaintiff's alleged disability or any alleged transfer requests by plaintiff. (Minesinger Dep. 120:20-121:3).

## LEGAL ARGUMENT

In the Complaint, plaintiff asserts claims of disability discrimination, disparate treatment, and retaliation under the New York City Human Rights Law ("NYCHRL").[7] The Complaint alleges that UPS failed to provide plaintiff with a requested medical accommodation, that it fired him after engaging in the "same actions" as other employees who were not terminated, and that

---

[7] In his Complaint, plaintiff also asserted a claim for hostile work environment. In an April 17, 2013 letter to the Court, however, plaintiff's counsel advised that plaintiff was abandoning his hostile work environment claim. (Brochin Aff. Exh. K).

his termination was in retaliation for his accommodation requests. (Complt., ¶¶ 26, 38, 37).[8] As set forth more fully below, plaintiff has uncovered no evidence to suggest that his allegations are true. The facts are that UPS provided plaintiff with the accommodation his doctor claims plaintiff needed – additional time to exercise – almost three years before his termination and within months of plaintiff's first alleged accommodation request. Furthermore, plaintiff admitted to violating UPS policy by falsifying training records and dropping off U.S.P.S. packages on the side of the road in the Bronx. Finally, no one involved in the decision to termination plaintiff's employment had any knowledge of plaintiff's alleged disability or of any of his alleged accommodation requests. Accordingly, plaintiff's claims must fail, and the Court should grant UPS's motion for summary judgment.

## I.     Standard for Summary Judgment.

Summary judgment is appropriate where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Disputes over irrelevant facts do not preclude granting summary judgment. *Anderson v. Liberty Lobby, Inc*. 477 U.S. 242, 248 (1986). A party opposing a motion for summary judgment may not rely on mere assertions of facts. Fed. R. Civ. P. 56(e). Rather, "[i]f a party fails to properly support an assertion of fact as required by Rule 56(c), then the court may grant summary judgment against it." *Timbie v. Eli Lilly & Co.*, 429 F. App'x 20, 23 (2d Cir. 2011).

Furthermore, "[w]here the movant is the defendant, or the party without the burden on the underlying claim, the movant has no obligation to produce evidence negating its opponent's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). "The moving party merely has to

---

[8]     Citations to the "Complt." refer to the November 4, 2011 Amended Complaint, attached as Exhibit B to the Brochin Aff.

point to the lack of any evidence supporting the non-movant's claim." *Id.* In this case, there exists no genuine issue of material fact, and UPS is entitled to judgment as a matter of law.

## II.    Plaintiff's Disability Discrimination Claim Fails as a Matter of Law.

Disability discrimination claims under the NYCHRL are subject to the *McDonnell Douglas* burden shifting analysis. *See Pearson v. Unification Theol. Seminary*, 785 F. Supp. 2d 141, 163 (S.D.N.Y. 2011) (citing *Ferraro v. Kellwood Co.*, 440 F.3d 96, 99-100 (2d Cir. 2006)). First, plaintiff must prove a *prima facie* case of disability discrimination by showing that (1) plaintiff's employer is subject to the NYCHRL; (2) plaintiff was disabled as defined by the NYCHRL; (3) plaintiff could perform the essential functions of his job, with or without reasonable accommodation; and (4) plaintiff suffered an adverse employment action because of his disability. *See id.* (citing *Giordano v. City of N.Y.*, 274 F.3d 740, 747 (2d Cir. 2001)). The NYCHRL defines disability as "any physical, medical, mental or psychological impairment, or a history or record of such impairment." N.Y. City Admin. Code § 8-102 (16)(a) (2013).

If plaintiff can establish a *prima facie* case of discrimination, the burden shifts to UPS to set forth a "legitimate, nondiscriminatory reason for the adverse employment action." *Ferraro*, 440 F. 3d at 100. Once UPS meets this burden of production, plaintiff must demonstrate that the defendant's profered reason was merely a pretext for discrimination. *Id.* At all times, the burden of persuasion remains with plaintiff. *Rambacher v. Bemus Pt. Ctr. Sch. Dist.*, 307 F. App'x 541, 543 (2d Cir. 2009) (citing *Patterson v. Cty. of Oneida*, 375 F.3d 206, 221 (2d Cir. 2004)).

### A.    Plaintiff Cannot Establish a *Prima Facie* Case of Disability Discrimination.

Assuming *arguendo* that plaintiff can establish the first three elements of his *prima facie* case for purposes of this motion only, his disability discrimination claim fails because there is no evidence that plaintiff suffered an adverse employment action *because of* his disability. *See*

*Pearson*, 785 F. Supp. 2d at 163 (emphasis added). Plaintiff must provide "'actual facts demonstrating discriminatory animus.'" *See Smith v. Reg'l Plan Ass'n, Inc.*, No. 10-cv-5857 (BSJ) (KNF), 2011 U.S. Dist. LEXIS 117712, at *15 (S.D.N.Y. Oct. 7, 2011) (quoting *Ortiz v. Std. & Poor's*, No. 10-cv-8490 (NRB), 2011 U.S. Dist. LEXIS 99122, at *15 (S.D.N.Y. Aug. 29, 2011)) (dismissing disability discrimination and retaliation claims under the NYCHRL and state and federal statutes where the plaintiff presented no evidence linking the alleged adverse employment action to her disability). Absent actual facts supporting the claims, discrimination is only one possible explanation for an employer's actions, and the defendant is entitled to summary judgment. *See id. See also Aka v. Jacob K. Javits Convention Ctr. of N.Y.*, No. 09-cv-8195 (FM), 2011 U.S. Dist. LEXIS 114002, at *49 (S.D.N.Y. Sept. 30, 2011) (granting summary judgment on NYCHRL and state and federal claims where plaintiff could not show his termination was *because of* his disability because plaintiff did not show his employer "treated disabled employees less favorably than able-bodied employees in response to requests for extended leave" or that the employer's decision "was based on anything other than [plaintiff's] inability to come to work").

Here, plaintiff has provided no evidence of discriminatory animus by UPS. Rather, plaintiff himself admits that nobody made inappropriate comments related to his alleged disability throughout his employment. (LeBlanc Dep. 290:15-290:18). As in *Aka*, where the plaintiff provided no evidence that his employer terminated him due to his disability, plaintiff here does not provide any evidence that UPS terminated him *because of* his disability. In fact, plaintiff has no evidence that anyone involved in the decision to terminate his employment had any knowledge of his alleged disability or alleged accommodation requests. The decision-maker here, Daniel Minesinger, had no knowledge of plaintiff's alleged disability or any alleged

-9-

transfer requests. (Minesinger Dep. 120:20-121:3). As plaintiff cannot meet his *prima facie* burden, the Court should grant summary judgment on plaintiff's disability discrimination claim.

### B.    UPS Had a Legitimate Non-Discriminatory Reason for Terminating Plaintiff.

Even if plaintiff could establish the elements of a *prima facie* case of disability discrimination, which he cannot, UPS is still entitled to summary judgment because UPS had legitimate, non-discriminatory reasons for terminating plaintiff. Specifically, UPS terminated plaintiff for violating UPS policy after he (1) admittedly falsified OSHA-required hazardous material training records and examinations and (2) dropped off U.S.P.S. packages next to a post office mailbox in the Bronx at approximately 2:00 a.m. (Minesinger Dep. 97:11-12, 119:6-13, 68:16-25). Plaintiff admitted in handwritten statements to engaging in both acts of misconduct. (Brochin Aff. Exhs. H and I). The undisputed evidence that plaintiff admittedly engaged in both acts of misconduct renders UPS's termination decision even more compelling.

Courts have found forgery to be a legitimate non-discriminatory reason for termination. *See, e.g., Sutera v. Schering Corp.*, 73 F.3d 13, 17 (2d Cir. 1995) (finding plaintiff's alleged forgery of physician signatures on pharmaceutical orders was a legitimate non-discriminatory reason for discharging plaintiff); *Ponticelli v. Zurich Am. Ins. Grp.*, 16 F. Supp. 2d 414, 437 (S.D.N.Y. 1998) (finding termination based on allegations of plaintiff forging signatures was legitimate non-discriminatory reason even where plaintiff denied these allegations). Plaintiff forged OSHA-required records including hazardous material training class attendance records for seven of his direct reports and tests relating to the class. (LeBlanc Dep. 89:20-90:8, 96:13-97:5; Brochin Aff. Exh. H). Plaintiff testified as follows:

> Q:    The sheets that were going to be part of UPS's hazmat training records were going to have forged signatures; correct?
> A:    Yes.
> Q:    And that's because you forged them; correct?

-10-

> A:      I recreated them.
>
> Q:      You recreated them by trying to make handwriting look different and signing employees' names?
>
> A:      Yes.

(LeBlanc Dep. 93:13-19).

Courts have also found that violating company policy is a legitimate non-discriminatory reason for discharging an employee. *See, e.g., Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 170 (2d Cir. 2006) (affirming dismissal of NYCHRL and other discrimination claims where employer's profered reason for termination was employee's violation of company policy); *Brown v. Pension Bds.*, 488 F. Supp. 2d 395, 406 (S.D.N.Y. 2007) (granting defendant summary judgment on plaintiff's disability discrimination claims and finding that defendant had a legitimate, non-discriminatory reason for firing plaintiff where plaintiff violated company policy regarding absences); *Saunders v. New Horizons Computer Learning Ctr.*, No. 99-cv-9532 (AGS), 2002 U.S. Dist. LEXIS 9495, at *13 (S.D.N.Y. May 29, 2002) (granting summary judgment for defendant on plaintiff's ADA claim and stating that "an employer's belief that an employee violated company policy need not be accurate to serve as a legitimate reason for termination, as long as that belief was honestly held"). Here, plaintiff violated UPS's integrity policy when he left 75 to 100 U.S.P.S. packages on the street rather than at the post office and again when he falsified federally-mandated safety training records. (Minesinger Dep. 97:11-12, 119:6-13, 68:11-69:2). Accordingly, UPS's decision to terminate plaintiff was supported by legitimate business reasons.

### C.      Plaintiff Cannot Show UPS's Legitimate Business Reason for Terminating Him Is a Pretext for Discrimination.

Once UPS sets forth a legitimate non-discriminatory reason its actions, "the presumption [of discrimination] completely 'drops out of the picture.'" *James v. N.Y. Racing Ass'n*, 233 F.3d

149, 154 (2d Cir. 2000) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510-11 (1993)). UPS is entitled to summary judgment on a discrimination claim "unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination." *Id.* (citations omitted). A plaintiff can show pretext either through direct evidence of discriminatory animus or by showing similarly situated employees were treated differently. *See, e.g., Chao v. Mount Sinai Hosp.*, 476 F. App'x 892, 896 (2d Cir. 2012).

Here, plaintiff will be unable to set forth any evidence of discriminatory animus. In fact, he testified here were no comments made regarding his disability. (LeBlanc Dep. 290:15-290:18). He also admitted in two handwritten statements to engaging in the misconduct that resulted in his termination. (Brochin Aff. Ex H and I; LeBlanc Dep. 53:3-8; 62:7-11; 96:13-97:5). Furthermore, the individual responsible for recommending plaintiff's termination, Daniel Minesinger, had no knowledge of plaintiff's alleged disability or of any alleged transfer requests by plaintiff. (Minesinger Dep. 120:20-121:3). Thus, plaintiff cannot present any evidence of discriminatory animus to prove pretext.

### 1.    Plaintiff's Disparate Treatment Claim Must Fail.

Similarly, plaintiff will be unable to set forth any evidence of similarly situated employees being treated more favorably than him. To prove disparate treatment, a plaintiff has the burden of showing that "a similarly situated employee not in the relevant protected group received better treatment" than the plaintiff. *Sealy v. Hertz Corp.*, 688 F. Supp. 2d 247, 255-256 (S.D.N.Y. 2009) (quoting *Carter v. New Venture Gear, Inc.*, 310 F. App'x 454 (2d Cir. 2009)). Under the NYCHRL, "[p]laintiff must establish 'by a preponderance of the evidence that [he] has been treated less well than other employees' due to unlawful discrimination." *Kaur v. N.Y.C. Health & Hosps. Corp.*, 688 F. Supp. 2d 317, 339-40 (S.D.N.Y. 2010). In *Kaur*, the court held

that summary judgment was appropriate for the defendant where the plaintiff did not provide evidence of any remarks showing decision makers harbored any discriminatory animus and where the plaintiff could not "identify any non-protected class employee who was treated differently." *Id.* at 340.

In the Complaint, plaintiff profers the names of two other employees – "John Argiento and Donna Manuza" - involved in the OSHA-audit investigation whom he alleges were treated differently. (Complt. ¶¶ 31, 38). At his deposition, plaintiff identified two other individuals, "Dave Colantonio" and "Louie Santana," whom he claims were also "treated differently" than he was with respect to the audit investigation. (LeBlanc Dep. 253:13-254:6; 257:14-21). However, in his deposition, even plaintiff admitted that the actions taken by these employees (who were disciplined for their actions) were not the same as the actions plaintiff took:

> Q: Did [John Argiento] forge that employee's signature on a paper?
> A: No. No.
> Q: Did he take the test for that employee?
> A: No.
> Q: The employee signed himself and took that test?
> A: Yes.
> Q: Did he leave packages by a mailbox?
> A: No.
>
> . . .
>
> Q: Did Donna [Manuzza] forge signatures or take tests for more than one employee?
> A: No.
> Q: Did Donna leave packages by a mailbox?
> A: Not that I know of.
> Q: So Donna did something different than you; right?
> A: Yes.
>
> . . .
>
> Q: [As to the other individuals] Did they sign sheets representing that their employees took a hazmat training?
> A: No.
> Q: Do you know if their employees took the hazmat training?
> A: I do not know.

-13-

> Q:  Do you know if their employees took the test following the hazmat training?
> A:  I do not know.
> Q:  Did any of these people leave packages by a mailbox in the middle of the Bronx?
> A:  I don't know.
>
> . . .
>
> Q: I'm asking if it was different.
> A:  Yes, different.

(LeBlanc Dep. 254:25-260:2).[9]

As explained by Daniel Minesinger, former District Human Resources Manager, the other individuals investigated following the audit engaged in different actions than plaintiff. (Minesinger Dep. 59:25-60:20; 64:25-65:11; 65:19-25). Ms. Manuzza was found to have allowed a driver to sign off on having attended training without personally verifying that the training was completed. (Minesinger Dep. 60:2-14). With respect to another individual, Larry Maher, the investigation revealed that he had allowed drivers to punch out of work without reentering the facility, potentially allowing them to avoid being questioned by the auditors. (Minesinger Dep. 64:25-65:11). Another employee, Mr. Argiento, conducted training of employees without the qualifications to do so. (Minesinger Dep. 65:19-25). Mr. Minesinger viewed these actions as failures to follow proper procedures, as opposed to the integrity policy violations found to have

---

[9] UPS notes that plaintiff claimed at his deposition that he was told that Ms. Manuzza signed one employee's name on an attendance sheet. (LeBlanc Dep. 255:23). However, plaintiff admittedly has no first hand knowledge of these allegations, having only heard them from a co-worker. (LeBlanc Dep. 256:5-14). Even if true, this alleged conduct is different than plaintiff's. Plaintiff admitted to forging multiple employees' signatures and to leaving U.S.P.S. packages on the side of the road in the Bronx. (LeBlanc Dep. 93:9-12; 96:13-97:5; 53:3-8; 62:7-11). This is untrue, and plaintiff's hearsay allegation cannot be relied upon in opposition to summary judgment. *See Davis-Bell v. Columbia Univ.*, 851 F. Supp. 2d 650, 676 (S.D.N.Y. 2012) ("If a deponent states that he overheard another person make a statement, and the deponent would not be allowed to testify at trial as to what the other person said because of the rule against hearsay, the deponent's statement may not be considered on a motion for summary judgment.") (quoting *Donovan v. Diplomat Envelope Corp.*, 587 F. Supp. 1417, 1426 (E.D.N.Y. 1984), *aff'd*, 760 F.2d 253 (2d Cir. 1985)).

been committed by plaintiff. (Minesinger Dep. 60:18-20; 65:9-11; 66:2-5). Plaintiff also has no evidence as to whether or not these individuals are disabled. (LeBlanc Dep. 263:2-10). Therefore, because there are material differences between the actions taken by these employees and the actions taken by plaintiff, they cannot be viewed as comparators.[10] *See Sealy*, 688 F. Supp. 2d at 256 ("if the record shows that a non-protected employee engaged in conduct 'materially different' than that of plaintiff, those employees will not be considered similarly situated for purposes of creating an inference of discrimination.") (citing *Billue v. Praxair, Inc.*, No. 07-cv-2359, 2008 U.S. App. LEXIS 23980, 2008 WL 4950991, at *1 (2d Cir. Nov. 20, 2008)).

Without evidence of similarly situated individuals being treated differently or direct evidence of discriminatory animus, plaintiff cannot prove that UPS's legitimate business reason for terminating him was a pretext for discrimination. As summary judgment was granted for the defendant in *Kaur*, where there was no evidence of discriminatory animus and no other similarly situated employees profered, here UPS is entitled to summary judgment on plaintiff's disability discrimination claim.

---

[10] Plaintiff's mere disagreement with UPS's disciplinary decisions as to these individuals is insufficient to prove pretext. *See Witkowich v. Gonzales*, 541 F. Supp. 2d 572, 581-82 (S.D.N.Y. 2008); *Jimoh v. Ernst & Young*, 908 F. Supp. 220, 226 (S.D.N.Y. 1996) ("To prove his racial discrimination claim, plaintiff must do more than simply disagree with defendant's business decisions."). Courts have repeatedly stated that when deciding employment discrimination cases they are not "'to transform . . . into personnel managers'" but instead they need to "'refrain from intruding into an employer's policy apparatus or second-guessing a business's decision-making process.'" *Fitzpatrick v. N.Y. Cornell Hosp.*, No. 00-cv-5894, 2002 U.S. Dist. LEXIS 25166, at *17 (S.D.N.Y. Jan. 9, 2003) (quoting *Coleman v. Prudential Relocation*, 975 F. Supp. 234, 239 (N.D.N.Y. 1997)). Thus, plaintiff cannot meet his burden of demonstrating pretext by arguing these individuals were not fairly disciplined, as compared to himself. Instead, he must show that they were similarly situated, which he will be unable to do.

-15-

III.   **Plaintiff's Failure to Accommodate Claim Fails as a Matter of Law.**

    A.   **Plaintiff Cannot Prove a *Prima Facie* Case for Failure to Accommodate.**

To prove a failure to accommodate claim under the NYCHRL, plaintiff must prove "(1) [he] has a disability as defined by the statute[], (2) [his] employers had notice of the disability, (3) with reasonable accommodation [he] could perform the essential functions of [his] job, and (4) the defendants refused to make reasonable accommodations for [his] needs." *Missick v. City of N.Y.*, 707 F. Supp. 2d 336, 354 (E.D.N.Y. 2010) (citing *Mitchell v. Washingtonville Cent. Sch. Dist.*, 190 F.3d 1, 6 (2d Cir. 1999)).

It is plaintiff's responsibility to inform his employer that he needs an accommodation. *See Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 184 (2d Cir. 2006). Courts should give weight to plaintiff's failure to request an accommodation. *See Nixon-Tinkelman v. N.Y.C. Dep't of Health*, No. 10-3317-cv, 2011 U.S. App. LEXIS 16569, at *4 (2d Cir. Aug. 10, 2011) (finding summary judgment was appropriate for defendants on a failure to accommodate claim where it was undisputed that a hearing impaired plaintiff did not make a request for a special telephone because "no reasonable jury could find discriminatory intent").

In addition, plaintiff must follow proper procedures in requesting an accommodation. In *Bresloff-Hernandez v. Horn*, the plaintiff, an employee of the New York Department of Corrections, submitted a memorandum requesting a tour change. No. 05-cv-0384 (JGK), 2007 U.S. Dist. LEXIS 71257, at *30-31 (S.D.N.Y. Sept. 21, 2007). Plaintiff "did not follow the DOC's formal procedure for requesting a disability accommodation." *Id.* at *30. Plaintiff was required to fill out necessary paperwork and provide documentation in support of her accommodation request. *Id.* at *30-31. The court granted summary judgment for the defendant and stated that the memorandum plaintiff submitted "appeared to be nothing more than a request

-16-

to accommodate a personal preference." *Id.* at *31. Just because "a plaintiff has submitted a doctor's note does not mean that the plaintiff is entitled to an accommodation." *Ragin v. E. Ramapo Cent. Sch. Dist.*, No. 05-cv-6496, 2010 U.S. Dist. LEXIS 32576, at *61 (S.D.N.Y. Mar. 31, 2010) (citing *Seldon v. Total Sys. Servs.*, 653 F. Supp. 2d 1349 (M.D. Ga. 2009) (retaliation case)).

Here, plaintiff was a supervisor and responsible for properly directing employees who came to him regarding accommodation inquiries. (LeBlanc Dep. 22:8-19). He also had access to UPS's accommodation and transfer policies. (LeBlanc Dep. 110:7-16). Plaintiff admits, however, that he never filled out paperwork or submitted any forms to request a transfer under the applicable policy. (LeBlanc Dep. 111:19-21, 129:3-10). Rather, plaintiff alleges that he simply handed a February 2008 letter from his doctor to several people over the course of two years – even after his transfer to the PDS role, which provided him with the additional time at home that his doctor claims he needed for exercising. (LeBlanc Dep. 115:12-23; 129:3-6; 131:6-8;134:21-135:6; 138:18-23). As noted above, the February 2008 letter solely focused on the hours plaintiff worked and his need for time to exercise. (Brochin Aff. Exh. E). The letter does not even state that plaintiff's heart condition necessitated the request. (*Id.*). If plaintiff needed additional accommodations beyond what his doctor described in the letter, it was his obligation to present evidence of that need both to UPS and in this litigation, which he has not done. As in *Bresloff-Hernandez*, where plaintiff's claim for failure to accommodate failed because she did not complete the necessary ADA forms, here plaintiff's claim should fail as well.

### 1.   Plaintiff's Disability Discrimination Claim Also Fails Because He Never Identified a Suitable Job to Which He Could have Transferred.

In addition, where the requested accommodation is a transfer, the plaintiff must identify a suitable position to which he or she could have transferred. *See Hart v. New York Univ. Hosps.*

-17-

*Ctr.*, No. 09-cv-5159, 2011 U.S. Dist. LEXIS 116538, at *13 (S.D.N.Y. Oct. 7, 2011) (under the NYCHRL, the plaintiff "must so establish that the request for a transfer as accommodation was reasonable and that a suitable vacancy existed at the time the request was made"); *Pimentel v. Citibank, N.A.*, 29 A.D.3d 141, 147 (N.Y. App. Div. 2006) ("a plaintiff seeking to hold a New York employer liable for a failure to make a transfer as a reasonable accommodation, has the burden of demonstrating that a vacant funded position exists and that plaintiff was qualified to fill that position") (citing *Jackan v. New York State Dept. of Labor*, 205 F.3d 562, 567 (2d Cir. 2000)). Critically, "[t]he burden of persuasion as to the existence of a reasonable accommodation remains with the plaintiff and is not satisfied by mere speculation." *Brice v. New York State Dept. of Health*, 901 N.Y.S.2d 898, 898 (N.Y. App. Div. 2009). Furthermore, an employer also has no obligation to create a position to accommodate an employee. *Graves*, 457 F.3d at 187 (citing *Norville v. State Island Univ. Hosp.*, 196 F.3d 89,99 (2d Cir. 1999)). Plaintiff has not uncovered any evidence of an open position closer to his home in Connecticut and was entirely unaware of the existence of any such position. At his deposition, plaintiff testified as follows:

> Q: Do you have any knowledge that there were any open operations supervisor jobs at these facilities in 2010 or 2011?
> A: No.
> Q: So what's the basis for your suggesting that you could have transferred there?
> A: That they were closer.
> Q: Did you ever check online to see if there were open positions in advertisements?
> A: No.

(LeBlanc Dep. 151:10-19). Accordingly, because plaintiff has no evidence or personal knowledge of an available position closer to his home, his failure to accommodate claim must fail. *See Brice*, 901 N.Y.S.2d at 898 ("Plaintiff had the opportunity to conduct discovery to identify an available 'vacant funded position' and failed to show that such vacancy existed during the relevant time period.").

-18-

**B.      Plaintiff Was Provided with a Reasonable Accommodation.**

Notwithstanding the fact that plaintiff did not follow proper procedures to request an accommodation, UPS provided plaintiff with a *de facto* accommodation in May 2008 – after he obtained the February 2008 medical note which he purportedly gave to a UPS employee. UPS transferred plaintiff to the position of Preload and Dispatch Supervisor, which accommodated his alleged need for more time to exercise. (LeBlanc Dep. 41:17-42:10). Prior to this, in his position as an On Road Supervisor, plaintiff testified that he worked approximately thirteen to fourteen hours per day beginning at about 6 A.M. (LeBlanc Dep. 16:20-17:5). In his PDS role, however, as of May 2008, plaintiff's hours decreased to approximately twelve hours per day. (LeBlanc Dep. 46:18-21). Despite being out of work for an additional one to two hours each day, plaintiff admitted that he still failed to exercise as instructed by his doctor. (LeBlanc Dep. 122:5-7). Where a plaintiff's disability is accommodated despite his or her deficient request, summary judgment is appropriate for the defendant. *See O'Connor v. Smith & Laquercia, LLP*, No. 08-cv-4559, 2010 U.S. Dist. LEXIS 94088, at *21-22 (E.D.N.Y. Sept. 9, 2010) (granting summary judgment to defendant on failure to accommodate claim where plaintiff never requested an accommodation, but employer "made an effort to accommodate her in various ways" anyway).

Plaintiff is not entitled to the accommodation of his choice. *Pimentel*, 29 A.D.3d at 148. "An employer is not required 'to provide every accommodation a disabled employee may request, as long as the accommodation provided is reasonable.'" *Krikelis v. Vassar Coll.*, 581 F. Supp. 2d 476, 486-87 (S.D.N.Y. 2008) (quoting *Fink v. N.Y.C. Dep't of Pers.*, 53 F.3d 565, 567 (2d Cir. 1995)). Courts have found accommodations to be reasonable even if the plaintiff is dissatisfied with them. *See, e.g., Krikelis*, 581 F. Supp. 2d at 486-87 (finding that plaintiff's request to take a break to eat at 6:00 P.M. was "reasonably accommodated" by employer

-19-

permitting her to eat while she worked); *Vinokur v. Sovereign Bank*, 701 F. Supp. 2d 276, 295 (E.D.N.Y. 2010) (finding defendant reasonably accommodated plaintiff's request to work only 32 hours, 4 days a week by assigning her to work 5 days a week with one day being a half day even though "plaintiff was 'not happy' with her reassignment"). In both *Krikelis* and *Vinokur*, the court found that employers reasonably accommodated their employees where the employer found a different way to provide the requested accommodation. Similarly, plaintiff allegedly provided a letter from his doctor referencing that he needed more time to exercise and suggesting a transfer of plaintiff's location. (LeBlanc Dep. 121:4-23). Although UPS did not relocate plaintiff, it accommodated his needs by reassigning him to the PDS role, thus reducing his hours and providing him with more time to exercise. (LeBlanc Dep. 121:24-122:4).

Essentially, plaintiff claims to have continued to request an accommodation *after* receiving the accommodation he needed – more time out of work to exercise. As UPS had already accommodated his alleged needs, plaintiff's additional requests – and his disability discrimination claim – are entirely meritless. Accordingly, summary judgment must be granted in UPS's favor.

## IV.   Plaintiff's Claim for Retaliation Fails as a Matter of Law.

Retaliation claims under the NYCHRL are also analyzed under the *McDonnell Douglas* burden-shifting framework. *See Kemp v. Metro-North R.R.*, 316 F. App'x 25, 27 (2d Cir. 2009). To establish a *prima facie* case of retaliation, a plaintiff must prove that (1) he participated in some type of protected activity; (2) that activity was known to the employer; (3) the employer engaged in some responsive conduct; and (4) there exists a causal connection between the two actions, such that 'a jury could 'reasonably conclude from the evidence that [the complained-of] conduct [by the employer] was, in the words of the [NYCHRL], reasonably likely to deter a

person from engaging in protected activity,' without taking account of whether the employer's conduct was sufficiently deterrent so as to be 'material.'" *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720-723 (2d Cir. 2010) (quoting *Williams v. New York City Hous. Auth.*, 61 A.D.3d 62, 71 (N.Y. App. Div. 2009)).

If a plaintiff proves a *prima facie* case for retaliation, the burden shifts to the employer to provide a legitimate, non-discriminatory reason for the action. *See id.* at 721. Once the employer provides this, the plaintiff must demonstrate that the employer's profered reason is actually pretextual, such as by showing that a retaliatory motive played any part in the adverse employment action. *Id.* at 723.

Under the NYCHRL, it is an

> unlawful discriminatory practice for any person engaged in any action to which this chapter applies to retaliate or discriminate in any manner against any person because such person has (i) opposed any practice forbidden under this chapter, (ii) filed a complaint, testified or assisted in any proceeding under this chapter, (iii) commenced a civil action alleging the commission of an act which would be an unlawful discriminatory practice under this chapter, (iv) assisted the commission or the corporation counsel in an investigation commenced pursuant to this title, or (v) provided any information to the commission pursuant to the terms of a conciliation agreement made pursuant to section 8-115 of this chapter.

N.Y. City Admin. Code § 8-107(7). It is "illegal for an employer to retaliate in 'any manner.'" *Pilgrim v. McGraw-Hill Cos.*, 599 F. Supp. 2d 462, 469 (S.D.N.Y. 2009).

**A.     Plaintiff Did Not Engage in a Protected Activity.**

Here, plaintiff has set forth no evidence that he engaged in any protected activity. Plaintiff never made any complaints of discrimination to management, nor did he file any internal complaints with UPS prior to his termination. Plaintiff's only action in regard to his alleged disability was to provide a February 2008 letter from his doctor to various other UPS

-21-

employees. This is insufficient to qualify as a protected activity. Rather, "[a]n employee engages in a protected activity when [he] complains of an employment practice that [he] reasonably believes violates the law." *Mayers v. Emigrant Bancorp, Inc.*, 796 F. Supp. 2d 434, 448 (S.D.N.Y. 2011) (citing *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000)).

Even under the liberal standard courts apply to claims made under the NYCHRL, for a complaint to be a "protected activity," an employer must understand an employee's complaint to be based on discrimination. *See id.* at 448, 450 n.22. Thus, if it is unclear that a complaint is based on discrimination, the "'onus is on the speaker to clarify to the employer that [he] is complaining of unfair treatment due to [his] membership in a protected class.'" *Id.* at 448 (quoting *Aspilaire v. Wyeth Pharms., Inc.*, 612 F. Supp. 2d 289, 309 (S.D.N.Y. 2009)). In *Mayers*, where plaintiff supported complaints of discrimination made in an anonymous note, the court held this could not constitute a protected activity on an NYCHRL claim because "a reasonable employer would not have understood that Mayers was making a complaint of unlawful discrimination." *Id.* at 450. Here, UPS could not have understood handing a doctor's letter to various individuals to be a complaint about unlawful discrimination. Thus, UPS is entitled to summary judgment on plaintiff's retaliation claim.

### B.   Plaintiff Cannot Satisfy the Elements of a *Prima Facie* Case.

Assuming *arguendo* that the Court finds plaintiff's submission of a doctor's letter to be a protected activity, he is still unable to prove a *prima facie* case. A *prima facie* case requires a causal connection between the protected activity and the retaliatory act. *Fincher*, 604 F.3d at 720. Courts have found that a lapse of time between an employee's alleged protected activity and an employer's potentially retaliatory act will prevent a plaintiff from satisfying their *prima facie* burden. *See, e.g., Milne v. Navigant Consulting, Inc.*, No. 08-cv-8964, 2012 U.S. Dist. LEXIS

114005, at *23 (S.D.N.Y. Aug. 13, 2012) (finding summary judgment for defendant appropriate on an NYCHRL retaliation claim and stating that "in general within this Circuit, a two- or three-month lapse between the protected activity and the adverse employment action suffices to sever any inferred causal relationship"); *Murray v. Visiting Nurse Servs.*, 528 F. Supp. 2d 257 (S.D.N.Y. 2007) ("district courts within the Second Circuit have consistently held that the passage of two to three months between the protected activity and the adverse employment action does not allow for an inference of causation").

Here, plaintiff presumably is arguing that submitting a doctor's note to various UPS employees is a protected activity. While UPS maintains this is *not* a protected activity under the NYCHRL, plaintiff cannot establish a causal connection between this activity and his termination. Plaintiff alleges that he submitted the note on four separate occasions – February 2008 (which is time-barred), March 2009, February 2010, and February 2011. (LeBlanc Dep. 115:16-23; 126:4-13; 132:23-133:10; 141:4-12; 167:2-13). Even accepting these facts as true, plaintiff's last alleged protected activity occurred more than two months before his termination. As courts in this district have found, a lapse of two to three months between a "protected activity" and an allegedly responsive action by an employer will sever any inference of discrimination. *See Milne,* 2012 U.S. Dist. LEXIS 114005, at *23.

Furthermore, it is plaintiff's burden to prove that the decision maker had knowledge of the alleged protected activity. *Murray*, 528 F. Supp. 2d at 271. Where the decision maker has no knowledge of underlying protected conduct, there cannot be an inference of discrimination. *See, e.g., id.* (granting employer summary judgment were "plaintiff failed to present even circumstantial evidence regarding (1) the decisionmakers' knowledge of plaintiff's protected activities . . ."); *Woodman v. WWOR-TV, Inc.,* 411 F.3d 69, 82-83 (2d Cir. 2005) (same). As set

forth above, the individual responsible for recommending plaintiff's termination, Daniel Minesinger, had no knowledge of plaintiff's alleged disability or of any alleged transfer requests by plaintiff. (Minesinger Dep. 120:20-121:3).

### C.   UPS Had a Legitimate Non-Discriminatory Reason for Terminating Plaintiff.

Even if the Court finds that plaintiff has proven the elements of a *prima facie* case, plaintiff's admitted dishonesty and policy violation were legitimate, non-retaliatory reasons for his termination from UPS. Accordingly, for the reasons discussed above in Section II.C, plaintiff cannot prove that UPS's profered reasons are a pretext for retaliation.

## V.   <u>Some of Plaintiff's Claims are Time-Barred Under the NYCHRL.</u>

Under the NYCHRL, discrimination claims are subject to a three year statute of limitations. N.Y. City Admin. Code § 8-502(d); *Kassner v. 2nd Ave. Delicatessen, Inc.*, 496 F.3d 229, 238 (2d Cir. 2007). Plaintiff filed the original Complaint in the instant action on October 5, 2011. Therefore, any instances of alleged discrimination occurring before October 5, 2008 are time-barred.

Plaintiff complains of one act of alleged discrimination that is time barred – handing a letter regarding a transfer to Yvonne Quinones, a human resources manager, in February or March 2008. (LeBlanc Dep. 125:18-126:13). UPS's alleged failure to accommodate this request, even if true, is a discrete act of discrimination. *See Stuevecke v. The N.Y. Hosp. Med. Ctr. of Queens*, No. 01-cv-326, 2003 U.S. Dist. LEXIS 14793, at *9-10 (E.D.N.Y. Aug. 26, 2003) (failure to provide reasonable accommodation for an otherwise-qualified employee with a disability is a discrete act). As this allegation occurred prior to the limitation period, it is statutorily time-barred under the NYCHRL and should be barred from the case, even if summary judgment is not granted as to the underlying claim.

-24-

84864846.7

**VI.** **Plaintiff is Barred From Requesting Punitive Damages.**

In the event summary judgment is not granted as to all of plaintiff's claims, UPS notes that plaintiff is barred from requesting an award of punitive damages. Plaintiff failed to plead punitive damages in his Complaint. While punitive damages can be awarded under the NYCHRL, they have not been awarded in the past without being sufficiently pleaded. *See* N.Y. City Admin. Code § 8-126(a) (2012), *Scheiner v. Wallace*, No. 93-cv-0062, 1996 U.S. Dist. LEXIS 9843, at *11 (S.D.N.Y. July 11, 1996) ("Assuming that punitive damages are available in the instant case, plaintiffs nevertheless have not sufficiently pled such a claim in their amended complaint."). Accordingly, in the event that that the Court does not grant summary judgment as to any portion of plaintiff's Complaint, UPS requests that plaintiff be barred from pursuing any claim for punitive damages at trial.

## CONCLUSION

For the foregoing reasons, defendant UPS respectfully requests that the Court grant its motion for summary judgment and dismiss the Complaint with prejudice in its entirety.

Date: September 13, 2013                    By:    s/Heather Weine Brochin
                                                              Heather Weine Brochin

-25-

84864846.7