DAY PITNEY LLP
7 TIMES SQUARE
NEW YORK, NY 10036-7311
(212) 297-5800
*Attorneys for Defendant*
United Parcel Service, Inc.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| RICHARD LEBLANC, | : | Case No. 1:11-cv-06983 (KPF) |
| Plaintiff, | : | |
| v. | : | **DEFENDANT'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE PURSUANT TO** |
| UNITED PARCEL SERVICE, INC., | : | *L. CIV. R.* **56.1** |
| Defendant. | : | |
| | : | (Document Filed Electronically) |
| | : | |

Defendant United Parcel Service, Inc. ("UPS"), by and through its attorneys Day Pitney LLP, submits the following statement of material facts as to which there is no dispute pursuant to *L. Civ. R.* 56.1 in support of its motion for summary judgment:

**A.   Plaintiff's Employment with UPS**

1.   UPS hired plaintiff Richard LeBlanc as a helper in April 1992. (LeBlanc Dep. 10:18-23).[1]

---

[1]   The cited portions from the transcript of Richard LeBlanc's April 19, 2012 deposition are attached to the accompanying Brochin Affirmation as Exh. D.

2. Several months later, plaintiff was promoted to a full-time package car driver. (LeBlanc Dep. 10:24-11:14).

3. In February 2001, plaintiff was promoted to an On-Road Supervisor, a position in which he was responsible for supervising package car drivers. (LeBlanc Dep. 14:20-15:4).

4. As an On-Road Supervisor, plaintiff worked approximately thirteen to fourteen hours per day, beginning at approximately 6:00 A.M. each morning. (LeBlanc Dep. 16:20-17:5).

5. During the period of time at issue in this litigation, plaintiff worked at or out of the UPS facility on Brush Avenue in the Bronx, New York and lived in Newtown, Connecticut, approximately one hour and ten minutes away. (LeBlanc Dep. 19:16-22).

**B.     Plaintiff's Alleged Medical Condition and Transfer**

6. Plaintiff suffered a heart attack in May 2007 and was on a leave of absence for a period of a few months. (LeBlanc Dep. 32:17-33:3; 33:18-23).

7. At the time he returned to work, plaintiff resumed his job as an On-Road Supervisor and worked the same hours as before his heart attack. (LeBlanc Dep. 37:8-20).

8. During the course of this litigation, plaintiff produced a letter from his cardiologist dated February 12, 2008. (Affirmation of Heather Weine Brochin ("Brochin Aff.") Exh. E).

9. The February 12, 2008 letter states that plaintiff needed to exercise for his condition and claims that "he would be able to exercise if he saved some time on his commute to work." (*Id.*)

10. Plaintiff testified at his deposition that he provided a copy of this letter to a UPS employee named Yvonne Quinones in February 2008. (LeBlanc Dep. 126:4-13).

84877182.3

11. In May 2008, UPS transferred plaintiff to a position as a Preload and Dispatch Supervisor ("PDS") in the package center on Brush Ave. (LeBlanc Dep. 38:4-16; 46:18-21).

12. The PDS position involved supervising package center employees who were responsible for handling the nightly sorting and distribution of packages in the center. (LeBlanc Dep. 47:23-48:3).

13. In the PDS role, plaintiff's workday was approximately twelve hours per day. (LeBlanc Dep. 49:3-9).

14. Plaintiff did not use the additional non-working time, that resulted from this transfer, to exercise. (LeBlanc Dep. 121:24-122:2).

15. Instead, he engaged in activities such as attending his children's sporting events. (LeBlanc Dep. 123:5-14).

### C.  Plaintiff's Alleged Subsequent Transfer Request

16. Plaintiff claims that the stress of commuting and working at night negatively impacted his health. (LeBlanc Dep. 116:13-117:20).

17. The February 12, 2008 letter from plaintiff's physician does not reference either "stress" associated with plaintiff's commute or issues with plaintiff working at night. (Brochin Aff. Exh. E).

18. The letter states that a reduction in plaintiff's commute would allow him more time to exercise. (Brochin Aff. Exh. E).

19. The letter is dated a few months prior to plaintiff's transfer to the PDS position. (LeBlanc Dep. 121:19-122:4).

20. UPS's Occupational Health group, which manages accommodation matters, has no record of receiving the February 2008 letter. (Rowan Decl. ¶¶4-5).

84877182.3

21. Plaintiff did not review or complete any paperwork under UPS's transfer policy. (LeBlanc Dep. 296:15-17).

22. Plaintiff knew how to access UPS's intranet portal. (LeBlanc Dep. 110:10-16).

23. As a supervisor at UPS, plaintiff was responsible for properly directing employees who came to him regarding accommodation inquiries. (LeBlanc Dep. 22:8-19).

24. Plaintiff did not inquire about or identify any particular available positions at UPS facilities closer to his Connecticut home. (LeBlanc Dep. 151:6-19).

D.   **Plaintiff's Falsification of Training Records**

25. In March 2011, UPS's Brush Ave. facility was preparing for an audit by an outside vendor of its safety training records required by the Occupational Health and Safety Administration ("OSHA"). (LeBlanc Dep. 91:20-92:12).

26. The audit would verify that UPS conducts appropriate safety training of its employees at the facility and maintains required documentation of the training. (LeBlanc Dep. 92:19-93:1).

27. Prior to the audit, the safety managers for the facility sought to collect outstanding training records. (LeBlanc Dep. 91:20-92:12; 98:6-12).

28. Following the audit, UPS identified irregularities in paperwork that was submitted just prior to the audit. (Minesinger Dep. 44:19-22; 48:20-49:19).[2]

29. Plaintiff had submitted some of the paperwork about which concerns were raised based upon similarities in the handwriting on the document. (Minesinger Dep. 67:7-16; 44:19-22).

---

[2] The cited portions from the transcript of Daniel Minesinger's August 8, 2013 deposition are attached to the accompanying Brochin Affirmation as Exh. G.

30. During the investigation, plaintiff wrote a statement addressing his actions with respect to paperwork submitted during the audit. (LeBlanc Dep. 93:9-12; 96:13-97:5; Brochin Aff. Exh. H).

31. In his statement, plaintiff admitted to forging attendance records for seven of his direct reports in connection with hazardous material training classes in which they were required to participate. (LeBlanc Dep. 93:9-12; 96:13-97:5; Brochin Aff. Exh. H).

32. Plaintiff also admitted to taking tests related to the hazardous material class in the names of his direct reports. (LeBlanc Dep. 89:20-90:8; Brochin Aff. Exh. H).

33. Plaintiff attempted to make the handwriting for each of the employees look different as he fabricated the training tests and rosters. (LeBlanc Dep. 90:16-23).

34. Plaintiff has no personal knowledge regarding the conduct of other supervisors or managers in connection with the investigation. (LeBlanc Dep. 254:25-260:2).

**E.**     **Plaintiff's Mishandling of U.S.P.S. Packages**

35. Prior to the OSHA audit, plaintiff dropped off approximately 75 to 100 United States Postal Service ("U.S.P.S.") packages next to a U.S.P.S. mailbox on a street in the Bronx at approximately 2:00 A.M. or 3:00 A.M. (LeBlanc Dep. 53:3-8; 62:7-11; Brochin Aff. Exh. I).

36. These U.S.P.S. packages were regularly co-mingled in trailers received by UPS that needed to be delivered to the U.S.P.S. (LeBlanc Dep. 53:22-55:4).

37. On more than one occasion, plaintiff left the U.S.P.S. packages next to a mailbox. (LeBlanc Dep. 74:21-75:13; Brochin Aff. Exh. I).

38. He admitted to this misconduct in a handwritten statement. (Id.)

39. In the opinion of the District Human Resources Manager, plaintiff's conduct violated UPS policy. (Minesinger Dep. 68:16-69:2).

84877182.3

40. Newspapers articles reported on the packages' appearance next to the mailbox. (LeBlanc Dep. 73:10-24; Brochin Aff. Exh. J).

41. Following UPS's investigation of plaintiff's conduct with respect to the audit records and U.S.P.S. packages, plaintiff was terminated for dishonesty and violating UPS policy. (Minesinger Dep. 96:8-12).

42. The individual responsible for recommending plaintiff's termination, Daniel Minesinger, the former District Human Resources Manager, had no knowledge of plaintiff's alleged disability or of any alleged transfer requests by plaintiff at the time he recommended termination of employment. (Minesinger Dep. 120:20-121:3).

43. Nobody made inappropriate comments to plaintiff related to his alleged disability during his UPS employment. (LeBlanc Dep. 290:15-290:18).

44. Plaintiff filed the Complaint in the United States District Court for the Southern District of New York on October 5, 2011 against UPS. (Brochin Aff. Exh. A).

DAY PITNEY LLP
Attorneys for Defendant
United Parcel Service, Inc.


By:   /s/ Heather Weine Brochin
HEATHER WEINE BROCHIN (HB 5533)
hbrochin@daypitney.com
7 Times Square
New York, NY 10036
Telephone:  (212) 297-5800
Facsimile:  (212) 916-2940

Dated:  September 13, 2013.

84877182.3