**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X

RICHARD LeBLANC,

       *Plaintiff*,

       *v*.

UNITED PARCEL SERVICE, INC.,

       *Defendants*.

-----------------------------------------------------------X

**11 CV 6983 (KPF)**

**PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE PURSUANT TO L. CIV. R. 56.1.**

Pursuant to Local Rule 56.1 of the United States District Courts for the Southern and Eastern Districts of New York, Plaintiff Richard LeBlanc submits the following Statement of Material Facts in Dispute.

| Defendant's Alleged Material Facts | Plaintiff's Response |
|---|---|
| 1. UPS hired plaintiff Richard LeBlanc as a helper in April 1992. (LeBlanc Dep. 10:18-23). | Plaintiff denies. It was April 1992. *LeBlanc Aff*., ¶ 5. |
| 2. Several months later, plaintiff was promoted to a full-time package car driver. (LeBlanc Dep. 10:24-11:14). | Plaintiff admits. |
| 3. In February 2001, plaintiff was promoted to an On-Road Supervisor, a position in which he was responsible for supervising package car drivers. (LeBlanc Dep. 14:20-15:4). | Plaintiff admits. |
| 4. As an On-Road Supervisor, plaintiff worked approximately thirteen to fourteen hours per day, beginning at approximately 6:00 A.M. each morning. (LeBlanc Dep. 16:20-17:5). | Plaintiff admits. |

| Defendant's Alleged Material Facts | Plaintiff's Response |
|---|---|
| 5. During the period of time at issue in this litigation, plaintiff worked at or out of the UPS facility on Brush Avenue in the Bronx, New York and lived in Newtown, Connecticut, approximately one hour and ten minutes away. (LeBlanc Dep. 19:16-22). | Plaintiff admits. |
| 6. Plaintiff suffered a heart attack in May 2007 and was on a leave of absence for a period of a few months. (LeBlanc Dep. 32:17-33:3; 33:18-23). | Plaintiff admits. |
| 7. At the time he returned to work, plaintiff resumed his job as an On-Road Supervisor and worked the same hours as before his heart attack. (LeBlanc Dep. 37:8-20). | Plaintiff admits. |
| 8. During the course of this litigation, plaintiff produced a letter from his cardiologist dated February 12, 2008. (Affirmation of Heather Weine Brochin ("Brochin Aff.") Exh. E). | Plaintiff admits. Plaintiff denies that it was the only time that he submitted a doctor's note or the only accommodation requested. *Quinn Aff.*, ¶¶ 5–8; *LeBlanc Tr.*, 115:18–20; 126:4–15; 129:14–20; 130:15–21; 132:18–133:10; 139:10–16; 143:11–22; 141:4–8; 147:12–17; 148:17–149:7. |
| 9. The February 12, 2008 letter states that plaintiff needed to exercise for his condition and claims that "he would be able to exercise if he saved some time on his commute to work." (Id.) | Plaintiff admits. |
| 10. Plaintiff testified at his deposition that he provided a copy of this letter to a UPS employee named Yvonne Quinones in February 2008. (LeBlanc Dep. 126:4-13). | Plaintiff admits. Plaintiff denies that it was the only time that he submitted a doctor's note provided or the only accommodation requested. *Quinn Aff.*, ¶¶ 5–8; *LeBlanc Tr.*, 115:18–20; 126:4–15; 129:14–20; 130:15–21; 132:18–133:10; 139:10–16; 143:11–22; 141:4–8; 147:12–17; 148:17–149:7. |

| **Defendant's Alleged Material Facts** | **Plaintiff's Response** |
|---|---|
| 11. In May 2008, UPS transferred plaintiff to a position as a Preload and Dispatch Supervisor ("PDS") in the package center on Brush Ave. (LeBlanc Dep. 38:4-16; 46:18-21). | Plaintiff admits that he was transferred to Defendant's Brush Avenue location in the Bronx, but denies that it was in response to a request for accommodation or that it accommodated any request. Plaintiff's commute from Newtown, Connecticut to the Bronx, New York was still more than one hundred twenty (120) miles round trip daily. *LeBlanc Tr.*, 46:22–24; 47:19–22. |
| 12. The PDS position involved supervising package center employees who were responsible for handling the nightly sorting and distribution of packages in the center. (LeBlanc Dep. 47:23-48:3). | Plaintiff admits. |
| 13. In the PDS role, plaintiff's workday was approximately twelve hours per day. (LeBlanc Dep. 49:3-9). | Plaintiff admits. |
| 14. Plaintiff did not use the additional non-working time, that resulted from this transfer, to exercise. (LeBlanc Dep. 121:24-122:2). | Plaintiff admits, but denies that exercise was the only request for accommodation. Plaintiff's requested accommodation was to reduce his daily commute because driving to New York was stressful and working nights caused him insomnia, which further harmed his health. *LeBlanc Tr.*, 116:13–117:16. |
| 15. Instead, he engaged in activities such as attending his children's sporting events. (LeBlanc Dep. 123:5-14). | Plaintiff admits. |
| 16. Plaintiff claims that the stress of commuting and working at night negatively impacted his health. (LeBlanc Dep. 116:13-117:20). | Plaintiff admits. |

| **Defendant's Alleged Material Facts** | **Plaintiff's Response** |
|---|---|
| 17. The February 12, 2008 letter from plaintiff's physician does not reference either "stress" associated with plaintiff's commute or issues with plaintiff working at night. (Brochin Aff. Exh. E). | Plaintiff admits. |
| 18. The letter states that a reduction in plaintiff's commute would allow him more time to exercise. (Brochin Aff. Exh. E). | Plaintiff admits. |
| 19. The letter is dated a few months prior to plaintiff's transfer to the PDS position. (LeBlanc Dep. 121:19-122:4). | Plaintiff admits. Plaintiff denies that he was transferred to the PDS position in response to a request for accommodation or that it accommodated his request. *LeBlanc Aff.*, ¶ 21. |
| 20. UPS's Occupational Health group, which manages accommodation matters, has no record of receiving the February 2008 letter. (Rowan Decl. ¶¶4-5). | Plaintiff denies. UPS's Human Resources employee, Christine Rowan admitted that there is no record regarding what accommodations UPS grants at particular locations. *Rowan Tr.*, 100:4–16. |
| 21. Plaintiff did not review or complete any paperwork under UPS's transfer policy. (LeBlanc Dep. 296:15-17). | Plaintiff denies. The policy was not applied to Plaintiff. No supervisor or human resources personnel ever requested that he fill out that paperwork. *LeBlanc Aff.*, ¶¶ 16, 26–27, 29. When Plaintiff brought the request to his supervisors, they had an obligation to follow up on the request for medical accommodation. *Riddick Tr.*, 68:22–69:5. |
| 22. Plaintiff knew how to access UPS's intranet portal. (LeBlanc Dep. 110:10-16). | Plaintiff admits. |
| 23. As a supervisor at UPS, plaintiff was responsible for properly directing employees who came to him regarding accommodation inquiries. (LeBlanc Dep. 22:8-19). | Plaintiff admits. |

4

| **Defendant's Alleged Material Facts** | **Plaintiff's Response** |
|---|---|
| 24. Plaintiff did not inquire about or identify any particular available positions at UPS facilities closer to his Connecticut home. (LeBlanc Dep. 151:6-19) | Plaintiff denies. Plaintiff engaged in discussions with his direct supervisor, Mike Ferony to seek work closer to Plaintiff's home. *Quinn Aff.*, ¶ 7; *LeBlanc Aff.*, ¶ 11–12, 18, 23. |
| 25. In March 2011, UPS's Brush Ave. facility was preparing for an audit by an outside vendor of its safety training records required by the Occupational Health and Safety Administration ("OSHA"). (LeBlanc Dep. 91:20-92:12). | Plaintiff admits. |
| 26. The audit would verify that UPS conducts appropriate safety training of its employees at the facility and maintains required documentation of the training. (LeBlanc Dep. 92:19-93:1). | Plaintiff admits. |
| 27. Prior to the audit, the safety managers for the facility sought to collect outstanding training records. (LeBlanc Dep. 91:20-92:12; 98:6-12). | Plaintiff admits. |
| 28. Following the audit, UPS identified irregularities in paperwork that was submitted just prior to the audit. (Minesinger Dep. 44:19-22; 48:20-49:19). | Plaintiff admits. |
| 29. Plaintiff had submitted some of the paperwork about which concerns were raised based upon similarities in the handwriting on the document. (Minesinger Dep. 67:7-16; 44:19-22). | Plaintiff admits. |

| **Defendant's Alleged Material Facts** | **Plaintiff's Response** |
|---|---|
| 30. During the investigation, plaintiff wrote a statement addressing his actions with respect to paperwork submitted during the audit. (LeBlanc Dep. 93:9-12; 96:13-97:5; Brochin Aff. Exh. H). | Plaintiff denies. Plaintiff had no choice but to write the statement because he was directed to write it by his supervisor. *LeBlanc Tr.*, 97:6–17. |
| 31. In his statement, plaintiff admitted to forging attendance records for seven of his direct reports in connection with hazardous material training classes in which they were required to participate. (LeBlanc Dep. 93:9-12; 96:13-97:5; Brochin Aff. Exh. H). | Plaintiff denies that he forged records but admits that he reconstructed a sign-in sheet for training that he oversaw and conducted. *LeBlanc Tr.*, 87:20–88:13. |
| 32. Plaintiff also admitted to taking tests related to the hazardous material class in the names of his direct reports. (LeBlanc Dep. 89:20-90:8; Brochin Aff. Exh. H). | Plaintiff denies. Plaintiff recreated tests answer sheets after they were lost. Plaintiff did not take tests in the names of other employees. All the employees took the tests. *LeBlanc Dep.*, 87:20–88:13; *LeBlanc Aff.*, ¶¶ 30–37. |
| 33. Plaintiff attempted to make the handwriting for each of the employees look different as he fabricated the training tests and rosters. (LeBlanc Dep. 90:16-23). | Plaintiff admits. |
| 34. Plaintiff has no personal knowledge regarding the conduct of other supervisors or managers in connection with the investigation. (LeBlanc Dep. 254:25-260:2). | Plaintiff admits. |
| 35. Prior to the OSHA audit, plaintiff dropped off approximately 75 to 100 United States Postal Service ("U.S.P.S.") packages next to a U.S.P.S. mailbox on a street in the Bronx at approximately 2:00 A.M. or 3:00 A.M. (LeBlanc Dep. 53:3-8; 62:7-11; Brochin Aff. Exh. I). | Plaintiff denies that he dropped them off but admits that he was directed to place them there by his manager who was never terminated, David Flood. *LeBlanc Tr.*, 59:19–24; 61:18–24; 65:8–11. *LeBlanc Aff.*, ¶ 38. |

| **Defendant's Alleged Material Facts** | **Plaintiff's Response** |
|---|---|
| 36. These U.S.P.S. packages were regularly co-mingled in trailers received by UPS that needed to be delivered to the U.S.P.S. (LeBlanc Dep. 53:22-55:4). | Plaintiff admits. |
| 37. On more than one occasion, plaintiff left the U.S.P.S. packages next to a mailbox. (LeBlanc Dep. 74:21-75:13; Brochin Aff. Exh. I). | Plaintiff denies. Plaintiff was instructed to leave them by his manager, David Flood, who was not terminated. *LeBlanc Tr.*, 59:19–24, 61:18–24, 65:8–11; *LeBlanc Aff.*, ¶ 38. |
| 38. He admitted to this misconduct in a handwritten statement. (Id.) | Plaintiff denies that he admitted to misconduct. Plaintiff had no choice but to write the statement because he was directed to write it by his supervisor. *LeBlanc Tr.*, 97:6–17. |
| 39. In the opinion of the District Human Resources Manager, plaintiff's conduct violated UPS policy. (Minesinger Dep. 68:16-69:2). | Plaintiff denies. This retrospective self-serving testimony was never shown by Defendant to have had bearing on Plaintiff's termination. What information Mr. Minesinger obtained from Defendant is irrelevant. Mr. Minesinger "didn't know anything about anything." *Minesinger Tr.*, 120:25–121:2. |
| 40. Newspapers articles reported on the packages' appearance next to the mailbox. (LeBlanc Dep. 73:10-24; Brochin Aff. Exh. J). | Plaintiff denies. Plaintiff was never mentioned in any article. Plaintiff's supervisor was identified in at least one (1) article, but was not terminated. *See Brochin Aff.*, *Ex. J*). |
| 41. Following UPS's investigation of plaintiff's conduct with respect to the audit records and U.S.P.S. packages, plaintiff was terminated for dishonesty and violating UPS policy. (Minesinger Dep. 96:8-12). | Plaintiff denies. Defendant did not issue a single reason or a single set of reasons for termination. *Riddick Tr.*, 42:23–43:9. |

| **Defendant's Alleged Material Facts** | **Plaintiff's Response** |
|---|---|
| 42. The individual responsible for recommending plaintiff's termination, Daniel Minesinger, the former District Human Resources Manager, had no knowledge of plaintiff's alleged disability or of any alleged transfer requests by plaintiff at the time he recommended termination of employment. (Minesinger Dep. 120:20-121:3). | Plaintiff denies.  It is not relevant whether Minesinger had knowledge, but rather that Defendant had knowledge because it had an obligation to follow up on the request for medical accommodation with human resources. *Riddick Tr.*, 68:22–69:5. |
| 43. Nobody made inappropriate comments to plaintiff related to his alleged disability during his UPS employment. (LeBlanc Dep. 290:15-290:18). | Plaintiff admits. |
| 44. Plaintiff filed the Complaint in the United States District Court for the Southern District of New York on October 5, 2011 against UPS. (Brochin Aff. Exh. A). | Plaintiff admits. |

Dated: New York, New York  
       October 4, 2013

Respectfully submitted by:  
    THE HARMAN FIRM, PC  
    *Counsel for Plaintiff*

    _____s/_____  
    Walker G. Harman, Jr. [WH-8044]  
    200 West 57th Street, Suite 900  
    New York, New York 10019  
    wharman@theharmanfirm.com