**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X

RICHARD LeBLANC,

        *Plaintiff*,

      *v*.                            **11 CV 6983 (KPF)**

UNITED PARCEL SERVICE, INC.,

        *Defendant*.

-------------------------------------------------------------X

---

### PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

**THE HARMAN FIRM, PC**
*Counsel for Plaintiff*
Walker G. Harman, Jr. [WH-8044]
200 West 57th Street, Suite 900
New York, New York 10019
(212) 425-2600
wharman@theharmanfirm.com

## TABLE OF CONTENTS

I. PRELIMINARY STATEMENT ...........................................................................................1

   A.  Factual Background ................................................................................................2

II. LEGAL ARGUMENT .....................................................................................................3

   A.  Defendant's Motion Fails to Satisfy the Standard for Summary Judgment .........................3

   B.  Mr. LeBlanc Has a Disability Discrimination Claim as a Matter of Law ...........................4

     1.  Mr. LeBlanc has a *prima facie* case for disability discrimination....................................4

       (a)  Mr. LeBlanc is a member of a protected class. ..........................................................5

       (b)  Mr. LeBlanc was qualified to hold his position. .........................................................6

       (c)  Mr. LeBlanc suffered an adverse employment action.................................................6

       (d)  The adverse employment action gives rise to an inference of unlawful discrimination...................................................................................................7

     2.  Defendant does not establish a legitimate non-discriminatory reason for termination. ...9

     3.  Plaintiff has a disparate treatment claim........................................................................12

   C.  Defendant Refused to Provide Reasonable Accommodation to Mr. LeBlanc. .................14

     1.  Defendant did not engage in a good faith interactive process with Mr. LeBlanc and thus refused to provide him with reasonable accommodation for his disability...................15

     2.  Plaintiff was not provided with reasonable accommodation ...........................................15

   D.  Mr. LeBlanc Was Terminated in Retaliation for His Requests for Reasonable Accommodation........................................................................................................17

     1.  Plaintiff satisfies his *prima facie* case for retaliation .....................................................18

       (a)  Plaintiff Engaged in Protected Activity. ...................................................................18

       (a)  Defendant had knowledge of Mr. LeBlanc's requests. ............................................18

       (b)  Material adverse change.............................................................................................19

       (a)  Causation...................................................................................................................19

     2.  Defendant failed to establish a non-retaliatory reason for terminating Mr. LeBlanc.....21

III. CONCLUSION...............................................................................................................22

ii

## TABLE OF AUTHORITIES

**Cases**

*Aka v. Jacob K. Javits Convention Ctr. of N.Y.*,
 2011 WL 4549610, 2011 U.S. Dist. LEXIS 114002 (S.D.N.Y. Sept. 30, 2011) ...................7, 8

*Carlton v. Mystic Transp.*,
 202 F.3d 129 (2d Cir. 2000) ............................................................................................9

*Channon v. UPS*,
 629 N.W.2d 835 (Iowa 2001) ...........................................................................................1

*Croning v. Aetna Life Ins.*,
 46 F.3d 196 (2d Cir. 1995) ..............................................................................................10

*Galabya v. N.Y.C. Bd. of Educ.*,
 202 F.3d 636 (2d Cir. 2000) ..............................................................................................6

*Gorzkynski v. JetBlue Airways*,
 596 F.3d 93 (2d Cir. 2010) ..............................................................................................10

*Gross v. FBL Fin. Servs.*,
 557 U.S. 167, 129 S. Ct. 2343 (2009) ...............................................................................9

*Hollander v. Amer. Cyanamid*,
 172 F.3d 192 (2d Cir. 1999) ..............................................................................................4

*Kaur v. N.Y.C. Health & Hospitals Corp.*,
 688 F. Supp. 2d 317 (S.D.N.Y. 2010) ...............................................................................8

*McDonnell Douglas Corp. v. Green*,
 411 U.S. 792, 93 S. Ct. 1817 (1973) ........................................................................passim

*Miloscia v. B.R. Guest Holdings*,
 33 Misc. 3d 466, 928 N.Y.S.2d 905 (N.Y. Sup. Ct. 2011)...............................................10

*Missick v. City of N.Y.*,
 707 F. Supp. 2d 336 (E.D.N.Y. 2010) ...............................................................................8

*O'Reilly v. Marina Dodge*,
 435 Fed. App'x 8 (2d Cir. 2011) ........................................................................................9

*Ramos v. Marriott Int'l*,
 134 F. Supp. 2d 328 (S.D.N.Y. 2001) ..............................................................................21

*Reeves v. Sanderson Plumbing Prods.*,
 530 U.S. 133, 120 S. Ct. 2097 (2000) ..............................................................................21

*Schnabel v. Abramson*,
 232 F.3d 83 (2d Cir. 2000) ................................................................................................4

*Sealy v. Hertz Corp.*,
 688 F. Supp. 2d 247 (S.D.N.Y. 2009) ...............................................................................8

*Slattery v. Swiss Reinsurance Am. Corp.*,
 248 F.3d 87 (2d Cir. 2001) ................................................................................................9

*Smith v. Reg'l Plan Ass'n*,
  2011 WL 4801522, 2011 U.S. Dist. LEXIS 117712 (S.D.N.Y. Oct. 7, 2011) ..........................7

*Sutera v. Schering Corp.*,
  73 F.3d 13 (2d Cir. 1995) ...............................................................................................10

*Woodman v. WWOR-TV*,
  411 F.3d 69 (2d Cir. 2005) ................................................................................................9

**Statutes**

42 U.S.C. §§ 12101–12213 ...................................................................................................7

N.Y.C. ADMIN. CODE § 8-107 ................................................................................................4

N.Y.C. ADMIN. CODE, § 8-102(16)(a) ....................................................................................5

N.Y.C. ADMIN. CODE, § 8-102(16)(b) ....................................................................................5

N.Y.C. ADMIN. CODE, §§ 8-101–31 ...............................................................................passim

**Rules**

FED. R. CIV. P. 30(b)(6) .................................................................................................11, 22

FED. R. CIV. P. 56(a) .............................................................................................................1

FED. R. CIV. P. 56(c) .............................................................................................................3

FED. R. CIV. P. 56(d) .............................................................................................................2

**Law Review Articles**

Paul A. Race, J.D., M.D. & Seth M. Dornier, J.D.,
  *ADA Amendments Act of 2008: The Effect on Employers and Educators*,
  46 Willamette L. Rev. 357 (2009) ......................................................................................1

## I.   PRELIMINARY STATEMENT

Defendant UPS boldly submits to this Court that it can have its cake and eat it, too. Defendant wants this Court to believe that Plaintiff Richard LeBlanc never requested reasonable accommodation but that if he did, then they made such an accommodation *ex post facto*. *See Defendant United Parcel Service, Inc.'s Brief in Support of its Motion for Summary Judgment*, filed September 13, 2013, at 19, wherein Defendant describes a retaliatory demotion as reasonable accommodation. Reasonable accommodation lends itself to a binary yes or no: "you can't have it both ways." Paul A. Race, J.D., M.D. & Seth M. Dornier, J.D., *ADA Amendments Act of 2008: The Effect on Employers and Educators*, 46 Willamette L. Rev. 357, 388 (2009).[1] Defendant's Motion stumbles through the inherent contradiction that Mr. LeBlanc purportedly did not make a request to be accommodated after he suffered a heart attack, but that if he had, he was anyway. Such a proposition hardly supports the summary judgment requirement that there be no dispute of material fact. *See* FED. R. CIV. P. 56(a).

It is undisputed that Mr. LeBlanc suffered a heart attack in mid-2007. *See Transcript of Richard LeBlanc Deposition*, taken April 19, 2012 (hereinafter "*LeBlanc Dep*."), 33:3–23. He thereafter needed and submitted multiple requests for reasonable accommodation. *Id*. 110:20–22; 115:12–18; 126:4–15; 129:14–20; 128:11–22; 132:18–133:10; 139:10–16; 141:4–8; 143:11–22; 147:12–17; 148:17–149:7.

Defendant UPS "is a multinational air and ground package delivery company." *Channon v. UPS*, 629 N.W.2d 835, 840 (Iowa 2001). Defendant claims that they had no idea that Mr. LeBlanc needed or submitted requests for accommodation. *Def.'s Motion* at 1. Unfortunately

---

1. Citing The ADA Restoration Act of 2007: Hearing on H.R. 3195, Before the H. Comm. on Education and Labor, 110th Cong. (Jan. 29, 2008) (statement of Carey L. McClure, plaintiff in ADA lawsuit against General Motors), available at http://web.archive.org/web/edlabor.house.gov/testimony/2008-01-29-CareyMcClure.pdf.

for Mr. LeBlanc, this may be true.  That is because Defendant admits that it never even completed a search—or even tried to search—for responsive documents on the most material factual issue in this case: whether and when Mr. LeBlanc requested accommodations.  *See Transcript of Christine Rowan Deposition*, taken February 19, 2013 ("*Rowan Dep*."), 100:4–16.

Furthermore, due to Defendant's wholesale failure to even search for responsive information or, in some cases, produce only selective information in support of its pretextual excuses, Mr. LeBlanc cannot form fulsome responses on certain key material issues.  As such, he "cannot [on certain material issues] present facts essential to justify [his] opposition."  FED. R. CIV. P. 56(d).  Defendant's legally unsupported Motion is also factually contradictory and inherently flawed; Defendant wants this Court to believe that Mr. LeBlanc never made a request for an accommodation.  *Def.'s Motion* at 19.  Defendant also submits that it accommodated these purportedly phantom requests.  *Id*.  For these reasons, Defendant's Motion simply falls flat on its face.

## A.     Factual Background

Mr. LeBlanc is fifty (50) years old.  *Affidavit of Richard LeBlanc*, sworn to October 4, 2013 ("*LeBlanc Aff*."), ¶ 1.  He was employed by Defendant for over twenty (20) years.  *Id*. ¶ 5–6.  He consistently earned promotions and received positive performance reviews throughout his tenure.  He received salary increases frequently until 2011 when he was demoted from Driver to On-Car Supervisor to Pre-Load Dispatch Supervisor ("PDS").  *Id*. ¶ 6, 19, 21–22.

Unfortunately, Mr. LeBlanc's health failed in May 2007.  *LeBlanc Dep*. 33:3–23.  He was admitted to the hospital and diagnosed as having had a heart attack.  *Id*.  After that, he was on medical leave for six (6) weeks.  *Id*.  Upon returning to work, Mr. LeBlanc requested reasonable accommodations continuously for three (3) years but was always ignored and his

requests denied. *Id*. 33:3–23; 110:20–22; 115:12–18; 126:4–15; 129:14–20; 128:11–22; 132:18–133:10; 139:10–16; 141:4–8; 143:11–22; 147:12–17; 148:17–149:7; *LeBlanc Aff*. ¶ 1, 3–4, 16–19.   He was summarily terminated from his employment with Defendant because of his continuous accommodation requests and they found him too old to continue supporting. *Id*.

Defendant offers no facts or law to support its flawed Motion.  Plaintiff is certain that the Court, after reading the Parties' submissions, will see as we do, that we agree on little.  *See Plaintiff's Response to Defendant's Statement of Material Facts Not in Dispute Pursuant to L. Civ. R. 56.1*, dated October 4, 2013.  Mr. LeBlanc has already suffered enough and deserves his day in Court.

## II.   LEGAL ARGUMENT

Defendant's Motion for Summary Judgment must fail because there are genuine disputes of material facts between the parties.  Defendant is not entitled to summary judgment because it completely failed to establish that: (i) Mr. LeBlanc's was not terminated for his disability or for requesting reasonable accommodation of it; (ii) Mr. LeBlanc was granted his right to accommodation; or that (iii) Defendant terminated Mr. LeBlanc based on any legitimate non-discriminatory reasons for which Mr. LeBlanc's colleagues and supervisors were not terminated. *LeBlanc Aff*. ¶ 38.

## A.   Defendant's Motion Fails to Satisfy the Standard for Summary Judgment

Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The moving party must meet this standard on every legal

claim brought by the non-moving party or those claims will be preserved for trial.  Here, the evidence suggests that Mr. LeBlanc was treated differently from UPS employees that did not request accommodation.  Defendant provided a pretext for Mr. LeBlanc's discriminatory termination, and that Mr. LeBlanc was terminated in retaliation for his persistence in seeking reasonable accommodation for his disability.  Accordingly, the evidence unequivocally supports Mr. LeBlanc's *prima facie* claims of disability discrimination, failure to accommodate, and retaliation.

**B.    Mr. LeBlanc Has a Disability Discrimination Claim as a Matter of Law**

   **1.    Mr. LeBlanc has a *prima facie* case for disability discrimination.**

   The key issue in determining whether a plaintiff has a disability discrimination claim case turns on whether the plaintiff satisfies all four (4) prongs of the *McDonnell Douglas* burden-shifting formula.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824 (1973).

   Under § 8-107 of the New York City Human Rights Law, as codified at N.Y.C. ADMIN. CODE, §§ 8-101–31 ("NYCHRL"), an employee needs to establish a *prima facie* case for disability discrimination.  However, the Second Circuit has clarified that " '[t]he burden of proof that must be met to establish a *prima facie* case is minimal.' "  *Schnabel v. Abramson*, 232 F.3d 83, 87 (2d Cir. 2000) (quoting *Hollander v. Amer. Cyanamid*, 172 F.3d 192, 199 (2d Cir. 1999)). Under *McDonnell Douglas*, the employee has the initial burden to assert a *prima facie* claim; the employer must provide a legitimate non-discriminatory reason for termination.  The plaintiff in turn has the burden to present evidence suggesting that the alleged reason is merely a pretext for an illegal termination.  *McDonnell Douglas*, 411 U.S. at 802, 93 S. Ct. at 1824.

Under *McDonnell Douglas*, the employee's initial claim must assert that they are: (i) a member of a protected class; (ii) qualified to hold their position; (iii) suffered an adverse employment action. This initial claim must also assert that the adverse employment action gives rise to an inference of unlawful discrimination. *Id*.

### (a)    Mr. LeBlanc is a member of a protected class.

Mr. LeBlanc's claims are under the NYCHRL. The NYCHRL states that "[t]he term 'disability' means any physical, medical, mental or psychological impairment,[2] or a history or record of such impairment." NYCHRL, § 8-102(16)(a).

Mr. LeBlanc easily meets these criteria. He suffered severe health problems. *LeBlanc Dep*. 32:17–33:3. In May 2007, Mr. LeBlanc was admitted to the hospital and diagnosed as having had a heart attack. *Id*. As a result of his heart attack, he was out of work on medical leave for approximately six (6) weeks. *Id*. 33:20–22. He presented evidence of his medical condition to UPS on many occasions even though just once should have sufficed. *Id*. 110:20–22; 115:12–18; 126:4–15; 129:14–20; 128:11–22; 132:18–133:10; 139:10–16; 141:4–8; 143:11–22; 147:12–17; 148:17–149:7; *LeBlanc Aff*., ¶¶ 14-19. *See also* letter from Harvey M. Kramer, M.D. (Feb. 12, 2008), annexed as *Ex. H* to the *Declaration of Walker G. Harman, Jr. in Opposition to Defendant's Motion for Summary Judgment*, dated October 4, 2013 ("*Harman Decl*.").

Mr. LeBlanc's daily commute from his home in Newtown, Connecticut to his assigned work location in the Bronx, in New York exposed him to at least two (2) unreasonably stressful hours in traffic daily which exacerbated his medical condition. *LeBlanc Aff*. ¶¶ 11–12. More than once, his wife had to come to his aid at the side of the highway, which put them both at risk.

---

2.    "The term 'physical, medical, mental, or psychological impairment' means . . . [a]n impairment of any system of the body; including, but not limited to: the neurological system; the musculoskeletal system; the special sense organs and respiratory organs, including, but not limited to, speech organs; the cardiovascular system; the reproductive system; the digestive and genito-urinary systems; the hemic and lymphatic systems; the immunological systems; the skin; and the endocrine system." NYCHRL § 8-102(16)(b).

*LeBlanc Dep*. 243:2–15.  Defendant does not dispute Mr. LeBlanc's disability.  *Def.'s Mot*. at 8 and 18.  These facts establish Mr. LeBlanc's disability status under the NYCHRL.

### (b)     Mr. LeBlanc was qualified to hold his position.

The evidence presented by Defendant shows that Mr. LeBlanc could and did perform the essential functions of his job.  *LeBlanc Aff*. ⁋⁋ 6–12, 22.  Plaintiff was cleared work and returned in August 2007.  *LeBlanc Dep*. 37:8–24.  Defendant does not dispute the fact that Mr. LeBlanc was qualified to hold the position he was holding.  Besides, Mr. LeBlanc continuously received excellent performance reviews and was characterized as a strong performer.  *See* Mr. LeBlanc's *Quality Performance Reviews* annexed to the *Harman Decl*. as *Ex. J*; *see also LeBlanc Aff*. ⁋⁋ 6–7, 10, 39–40.  For these reasons, Mr. LeBlanc established that he was qualified to hold his position within the meaning of the NYCHRL.

### (c)     Mr. LeBlanc suffered an adverse employment action.

Defendant focuses its legal argument on the third prong of the *McDonnell Douglas* test, claiming that Mr. LeBlanc did not suffer any adverse employment action.  This argument is preposterous.   Mr. LeBlanc suffered several adverse employment actions because of his disability.  First, Mr. LeBlanc has testified that he requested an accommodation for years and suffered in the face of Defendant's failure and refusal to accommodate his requests.  Mr. LeBlanc further testified that his health was exacerbated when UPS demoted him.  *LeBlanc Dep*. 116:10-25.  He was moved to night shifts with long hours and harsh conditions that further harmed his health.  *Id*.  As a final shameful act, evidence also shows that Plaintiff's employment was terminated because he made several requests for accommodation over an extended period of time.  *LeBlanc Aff*., ⁋⁋ 37.  "A plaintiff sustains an adverse employment action if [they] endure . . . a 'materially adverse change' in the terms and conditions of employment."  *Galabya v. N.Y.C. Bd. of Educ*., 202 F.3d 636 (2d Cir. 2000).

6

**(d)**   **The adverse employment action gives rise to an inference of unlawful discrimination.**

Defendant states that Mr. LeBlanc has provided no evidence of discriminatory animus because nobody made inappropriate comments related to his disability. *Def.'s Mot.* at 9. However, this argument is irrelevant because an adverse employment action is not linked to comments made to a disabled employee. It is linked to whether the adverse employment was motivated by discrimination. Actions taken towards Mr. LeBlanc clearly demonstrate a discriminatory animus against him because he was demoted to a PDS without ever requesting it—changing his sleep pattern and further harming his health. *LeBlanc Dep.* 116:10–25. The demotion was no effort to accommodate Mr. LeBlanc.

Moreover, many of the cases cited by Defendant are easily distinguished from the material facts in this action. Defendant attempts to argue that no evidence shows that Mr. LeBlanc suffered an adverse employment action because of his disability by referring to two (2) cases where summary judgment was granted in favor of the defendants.

One of the cases, *Smith v. Reg'l Plan Ass'n*, 2011 WL 4801522, 2011 U.S. Dist. LEXIS 117712 (S.D.N.Y. Oct. 7, 2011), is easily distinguished from this action because in *Smith*, the plaintiff failed to establish that she was disabled under the Americans with Disabilities Act, 42 U.S.C. §§ 12101–12213 ("ADA"). Further, *Smith* never established whether the plaintiff was disabled within the meaning of the NYCHRL. If the plaintiff was not disabled under the NYCHRL, she could not have suffered a resulting adverse employment action. In the present action, the fact that Mr. LeBlanc is disabled under the NYCHRL remains undisputed.

The second case, *Aka v. Jacob K. Javits Convention Ctr. of N.Y.*, 2011 WL 4549610, 2011 U.S. Dist. LEXIS 114002 (S.D.N.Y. Sept. 30, 2011), is completely distinguishable from the instant case because in *Aka*, the plaintiff took an open-ended leave of absence for one (1)

year.  When his employer demanded that he return, the plaintiff refused.  He was not terminated because he was disabled but rather because he refused to return to work after his employer told him that his continued employment depended on him returning to work.  Moreover, the plaintiff failed to establish a reasonable excuse for why he was unable to return to work.  Conversely, in this action, Mr. LeBlanc was ready, willing, and able to come to work—which he did up until the day of his illegal termination.  For these reasons, *Aka* is completely irrelevant to this case.  Defendant further cites cases where employees were subject to numerous negative reviews, write-ups, or other disciplinary action for poor performance or improper behavior in the workplace.  *See generally Kaur v. N.Y.C. Health & Hospitals Corp.*, 688 F. Supp. 2d 317 (S.D.N.Y. 2010); *Sealy v. Hertz Corp.*, 688 F. Supp. 2d 247 (S.D.N.Y. 2009); *Missick v. City of N.Y.*, 707 F. Supp. 2d 336, 354 (E.D.N.Y. 2010).  These cases exemplify situations where the employer had legitimate grounds to terminate the employee, and discrimination is only one plausible explanation for the employer's action.  In the instant case, Mr. LeBlanc did not receive any negative performance reviews.  To the contrary, based on positive performance reviews, he received a salary increase three (3) weeks prior to his termination.

Therefore, the facts show that the Defendant was well aware of the Plaintiff need for accommodation and that they were not willing to address his request.  Instead, UPS demoted Mr. LeBlanc to a job where his health condition was exacerbated and his sleep pattern disturbed—causing him insomnia.

Accordingly, Mr. LeBlanc satisfies the requirements set out in the *McDonnell Douglas* burden-shifting analysis because he has successfully asserted a *prima facie* disability discrimination case, and has presented sufficient evidence to support the conclusion that Defendant's proffered and multifarious reasons for termination were merely pretext for an illegal

employment action.  Defendant should not be granted summary judgment on Mr. LeBlanc's disability discrimination claim.

### 2. Defendant does not establish a legitimate non-discriminatory reason for termination.

Once the plaintiff has established a *prima facie* case of discrimination, there is presumption of unlawful discrimination.  This presumption "shifts the burden of production to the defendant, who must proffer a 'legitimate, nondiscriminatory reason' for the challenged employment action." *Woodman v. WWOR-TV*, 411 F.3d 69, 76 (2d Cir. 2005) (citing *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 91 (2d Cir. 2001)).  Furthermore, in *McDonnell Douglas*, the court noted that the non-discriminatory reason given by the employer does not automatically end the process because an employer should not be allowed to use an otherwise legitimate reason as camouflage for discrimination.  The employee must be given "a fair opportunity to show that [the employer's] stated reason for [the employee's] rejection was in fact pretext." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804, 93 S. Ct. 1817, 1825 (1973).  Plaintiff must show that Defendant's proffered reason for termination is pretextual and the 'but for' cause of the adverse employment action was discrimination.[3]  *Gross v. FBL Fin. Servs.*, 557 U.S. 167, 129 S. Ct. 2343 (2009); *see also O'Reilly v. Marina Dodge*, 435 Fed. App'x 8, 9 (2d Cir. 2011) (the court analyzed Plaintiff's NYSHRL and ADEA claims in the same manner, holding that a genuine issue of material fact existed as to the employer's proffered pretextual reason for termination).  However, direct evidence of discrimination is not necessary.  *See Carlton v. Mystic Transp.*, 202 F.3d 129 (2d Cir. 2000) (Plaintiffs must rely on the cumulative weight of circumstantial evidence because direct evidence of discrimination is rare; an employer

---

3.  The framework governing NYSHRL claims has been held to be identical to ADEA claims.  *Gorzkynski v. JetBlue Airways*, 596 F.3d 93 (2d Cir. 2010).

is highly unlikely to leave a 'well-marked' trail of discrimination); *see also Gorzkynski v. JetBlue Airways*, 596 F.3d 93 (2d Cir. 2010) ("Where an employer acted with discriminatory intent, "direct evidence of that intent will only rarely be available, so . . . affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination."); *see also Miloscia v. B.R. Guest Holdings*, 33 Misc. 3d 466, 472, 928 N.Y.S.2d 905, 911 (N.Y. Sup. Ct. 2011) ("Courts further urge caution in granting summary judgment in employment discrimination cases, as direct evidence of intentional discrimination is rarely available.").

In its Motion, UPS proffers that they terminated Mr. LeBlanc's for alleged falsification of documents and that Mr. LeBlanc allegedly left packages near a U.S.P.S. mailbox, which UPS has classified as an "integrity violation." In support of its argument that the alleged falsification was a legitimate non-discriminatory reason for termination, Defendant cites *Sutera v. Schering Corp.*, 73 F.3d 13 (2d Cir. 1995), which we support.

*Sutera* supports our contention that there is a genuine issue of fact as to whether Defendant's asserted reasons were pretextual. In *Sutera*, the Second Circuit determined that an employee's forgery of signatures in violation of a statute and the employer's policy against forgery was insufficient to evince a non-discriminatory reason. "[P]laintiff is not required to show that the employer's proffered reasons were false or played no role in the employment decision, but only that they were not the only reasons and that the prohibited factor was at least one of the 'motivating' factors." *Id.* at 17 (citing *Croning v. Aetna Life Ins.*, 46 F.3d 196, 203 (2d Cir. 1995)).

Here, the explanation proffered by UPS has many fundamental flaws and fails to conceal one of the actual reasons for Mr. LeBlanc's termination: his disability and requests for

accommodation.  UPS was not able to define what an integrity violation is and how it is different from other types of violations, such as "policy violations."  Besides, there is clearly a dispute of facts regarding the reason for Mr. LeBlanc's termination.  The Defendant's Motion for Summary Judgment states that at least two (2) reasons may have led to LeBlanc's termination, namely (i) the alleged falsification; and (ii) the issue related to packages.  These two (2) incidents occurred two (2) months apart.

The testimony of Defendant's witness pursuant to FED. R. CIV. P. 30(b)(6), Beverly Riddick, highlights a clear and genuine issue of fact regarding the circumstances surrounding LeBlanc's termination.  Ms. Riddick stated that LeBlanc was not terminated for his alleged falsification of documents but because of the issue regarding the packages allegedly placed next to a mailbox.  *Riddick Dep*. 42:23-43:9.  Defendant's other FED. R. CIV. P. 30(b)(6) witness, Daniel Minesinger, testified that the integrity violation resulted from Mr. LeBlanc's alleged falsification of documents, for which Mr. Minesinger claims to have terminated Mr. LeBlanc. *Minesinger Dep*. 68:11–15.  Meanwhile, Defendant's Motion states that the integrity violation is linked to the packages issue as well.  This shows a lack of consistency regarding UPS's purported reasons for terminating Mr. LeBlanc and what constitutes an integrity violation.  Both point to pretext.  There is a genuine dispute of facts as to why Mr. LeBlanc was terminated which shows that the reason set out for his termination was only a pretext because human resources professionals working at UPS are not able to give the same answer when asked the same question—namely the reason for Mr. LeBlanc's termination.

Mr. LeBlanc's termination is in no way consistent with his performance reviews, which were outstanding and qualified him as a "strong performer."  Mr. LeBlanc never received bad performance review or any complaints about his work.  However, those issues were not part of

his performance reviews.  His termination is also not consistent with the recommendation made by UPS's Employee Dispute Resolution panel, which voted to reinstate Mr. LeBlanc.

### 3.   Plaintiff has a disparate treatment claim.

Defendant is only entitled to summary judgment on a discrimination claim if the plaintiff cannot point to evidence that reasonably supports a finding of prohibited discrimination.  Here, Mr. LeBlanc was illegally terminated after he repeatedly sought accommodation for his heart. Under Title VII and under NYCHRL he was entitled to accommodation.  Therefore summary judgment must be denied.

There are different ways in which a plaintiff can show pretext and that he really was terminated based on disability discrimination: either through direct evidence of discriminatory animus or by showing similarly situated employees were treated differently.  The term "similarly situated" has a specific legal meaning but generally it refers to an employee who can be compared to another employee because he or she holds a similar job classification, comparable duties, skills and training, and is subject to the same performance standards.

Previous cases established that it is a "question of fact for the jury" as to whether a person is similarly situated to a plaintiff in a discrimination case.  *Graham v. L.I.R.R.*, 230 F.3d 34, 39 (2d Cir. 2000).

In *Graham*, the Second Circuit has held that to establish a *prima facie* case of employment discrimination based on disparate treatment, the plaintiff must be able to show that there is a "reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases."  The court applied an all-material-respects standard in determining whether two employees are similarly situated.  The standard varies from case to case and "must be judged based on (1) whether the plaintiff and those he maintains were similarly situated were subject to

the same workplace standards and (2) whether the conduct for which the employer imposed discipline was of comparable seriousness." *Id*. at 40. In other words, there should be an objectively identifiable basis for comparability. Hence, the standard for comparing conduct requires a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases, rather than a showing that both cases are identical." *Id*. at 39.

In *Shumway v. UPS*, term "similarly situated" is defined as an employee who "shared sufficient employment characteristics with that comparator so that they could be considered similarly situated." *Shumway v. UPS*, 118 F.3d 60, 64 (N.D.N.Y. 1997). In *Shumway*, the plaintiff was unable to meet her threshold to prove "similarly situated" because the decision-maker had not supervised the employees involved in the alleged other instances of rule violation; none of the male employees had been in prohibited relationships for as long as plaintiff had; or had engaged in harassment (as she had) after the end of the relationship; or had been warned of the policy against dating (as she was), had complaints brought against them (as she did), or lied to supervisors when confronted (as she had). *McGuinness v. Lincoln Hall*, 263 F.3d 49, 54 (2d Cir. 2001) citing *Shumway* at 64. This case is clearly distinguishable from the instant case.

Moreover, as Defendant's Fed. R. Civ. P. 30(b)(6) witness testified, Mr. LeBlanc and Defendant's employee, John Argiento, were both supervisors, and they reported to the same person. *Minesinger Dep*., 58:15–59:10. Only Mr. LeBlanc was terminated for purported "integrity violations." Mr. Argiento's actions were poor judgment and not an integrity violation. *Id*. Mr. Argiento received nominal disciplinary action for one (1) year only and was otherwise not subjected to any other adverse employment action.

Mr. Minesinger in his deposition was not able to justify how he would categorize one action as being "poor judgment" and the other as being "an integrity violation" *Minesinger Dep*.

97:6–12.  Mr. Minesinger stated that Mr. LeBlanc was fired because he falsified documents and that it constituted an integrity violation.  The inconsistency does not conceal Defendant's multiple pretexts.

Upon termination from UPS employment, employees are entitled to Employee Dispute Resolution ("EDR").  *Harman Decl.*, *Ex. I.*  EDR entails the terminated employee sitting before a panel of his peers.  The committee's decision is not binding on UPS.  However, it is extremely uncommon, if it happens at all, for employees to not have their jobs reinstated when the peer review board unanimously votes to reinstate that employee.  Beverly Riddick stated that she has no recollection of any instances where the peer review board has unanimously recommended reinstatement of an employee and the employee was not reinstated.  *Riddick Dep.* 63:5–12.  The peer review committee voted to re-instate plaintiff after reviewing his case.  However, despite the recommendation, UPS chose to summarily terminate Mr. LeBlanc, in direct retaliation for continuously requesting medical accommodation.

## C.   Defendant Refused to Provide Reasonable Accommodation to Mr. LeBlanc.

Defendant's Motion must fail because there is a genuine dispute of material fact as to whether Defendant granted reasonable accommodation to Mr. LeBlanc.  Defendant moved based on its allegation that Mr. LeBlanc did not effectively notify Defendant of his disability because he allegedly did not follow procedures in requesting accommodation.  Defendant simultaneously asserts that Mr. LeBlanc received *de facto* accommodation for a disability that he allegedly failed to report.  *Def.'s Mot.* at 19.  The inconsistency and contradiction of these assertions in itself showcases a genuine dispute of material fact, which is relevant to the fundamental question of whether Defendant is advancing a pretext for Mr. LeBlanc's illegal termination.  In failing to

14

provide Mr. LeBlanc with reasonable accommodation, UPS breached its affirmative duty to provide accommodation for documented disabilities.

> **1.     Defendant did not engage in a good faith interactive process with Mr. LeBlanc and thus refused to provide him with reasonable accommodation for his disability.**

Defendant failed to comply with state and federal requirements for accommodating disabled employees because it did not engage in a good faith interactive process to assess the type of accommodation Mr. LeBlanc needed as a disabled employee.  The key issue for determining whether an employer has provided a disabled employee with reasonable accommodation is whether the employer made a good faith effort to determine the needs of such employee.  The NYCHRL, "envisage employer and employee engaged in an interactive process in arriving at a reasonable accommodation for a disabled employee."  42 U.S.C. §§ 12101 *et seq*.; *Lovejoy-Wilson v. NOCO Motor Fuel*, 263 F.3d 208, 218–19 (2d Cir. 2001).

Nevertheless, Mr. LeBlanc was denied reasonable accommodation to his documented disability because Defendant failed to engage in any interactive process to assess his needs and provide accommodation that would be appropriate in view of his disabilities.  Defendant egregiously alleges that Mr. LeBlanc's demotion to PDS was a *de facto* accommodation.  Defendant however made no effort to engage Mr. LeBlanc to determine his needs and provide him with accommodation in view of his disability.  *Riddick Dep*. 68:23-69:5.  Furthermore, the evidence does not reveal the reason for Mr. LeBlanc's transfer.  In fact, Defendant alleges that the reason Mr. LeBlanc did not receive reasonable accommodation was that he purportedly failed to request it through the company's proper channels.

> **2.     Plaintiff was not provided with reasonable accommodation**

The requirements for establishing a failure to accommodate under the NYCHRL were established *supra*.  Claims for reasonable accommodation because of disability are not evaluated

under the *McDonnell Douglas* burden-shifting analysis, but a modified version of it because "a claim against an employer for failing to reasonably accommodate a disabled employee does not turn on the employer's intent or actual motive." *Peebles v. Potter*, 354 F.3d 761 (8th Cir. Jan. 8, 2004). "In a reasonable accommodation case, the discrimination is framed in terms of the failure to fulfill an affirmative duty- the failure to reasonably accommodate the disabled individual's limitations." *Id*. Under the applicable laws, employers are compelled to modify their work requirements to enable disabled individuals to have the same opportunities as their non-disabled counterparts. The concern is compelling behavior, not policing an employer's actions that, when accompanied by an invidious discriminatory intent, are unlawful. *See Mole v. Buckhorn Rubber Prods.*, 1219-20 (8th Cir. 1999). To hold otherwise would create an anomaly—a wheel-chair bound employee, properly owed a duty of accommodation, would have to show that the employer's failure to accommodate the employee's inability to walk was caused by the employee's inability to walk. *See Peebles* at 761.

Reasonable accommodations often consist of physical changes to the workplace to aid disabled employees, e.g., installing ramps for wheelchair-bound employees. Examples of other accommodations might include: 1) modifying job duties or work schedules; 2) allowing additional unpaid leave for medical reasons; 3) moving the employee to a vacant light-duty position; 4) installing special equipment to help the employee perform his duties; 5) providing the employee with a reader or interpreter; or 6) modifying tests, examinations, training materials or policies. *See* 29 C.F.R. § 1630.2(o). Defendant only offers that Plaintiff was provided a *de facto* accommodation.

Furthermore, the Defendant cannot claim that Mr. LeBlanc did not follow the proper procedures when he requested accommodation for his disability because Christine Rowan stated

that Defendant has no idea whether they have a mechanism to address requests for accommodation requests.  *Rowan Dep*. 107:23–108:25.  Again, this testimony of Christine Rowan shows that there is a genuine dispute of facts as to what process should be followed when requesting an accommodation.

**D.**   **Mr. LeBlanc Was Terminated in Retaliation for His Requests for Reasonable Accommodation.**

Title 8 of the NYCHRL makes it unlawful for an employer to discharge from employment, or to discriminate against in compensation or in the terms, conditions or privileges of employment, any person based on their "actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, sexual orientation or alienage or citizenship status".  N.Y.C. ADMIN. CODE § 8-107(1)(a). Under the NYCHRL it is an "unlawful discriminatory practice" for an employer to "retaliate or discriminate in any manner" on the basis of an employee's complaints about unlawful discrimination.

Under the NYCHRL, retaliation claims are analyzed under a burden shifting analysis. *Shepheard v. N.Y.C. Corr. Dep't*, 360 F. App'x 249, 251 (2d Cir. 2010).  First, the plaintiff must prove a *prima facie* case of retaliation demonstrating that (1) he was engaged in an activity protected by the NYCHRL; (2) the employer was aware of the activity; (3) an employment action adverse to the plaintiff occurred; and (4) there was a causal connection between the protected activity and the adverse employment action.  *Welch v. UPS*, 871 F. Supp. 2d 164; *Shepheard* at 251.

Then, the burden shifts to the employer to articulate a legitimate, non-retaliatory reason for the adverse action; lastly, the plaintiff must provide evidence demonstrating that the proffered reason is merely a pretext for retaliation.  *Id*.

1.      **Plaintiff satisfies his *prima facie* case for retaliation**

(a)      **Plaintiff Engaged in Protected Activity.**

Plaintiff engaged in a protected activity by asking for an accommodation following his heart attack and his doctor's recommendations.  The defendant's conduct was unlawful because they did not engage in the mandatory interactive process even though following a request for reasonable accommodation, there must be a mandatory "interactive process."  The reasonable accommodation "interactive process" requires the employer to actually talk to his employee about reasonable ways that he could accommodate him.   A request for reasonable accommodation is an ADA-protected activity.  *Weixel* at 149; *Rodriguez v. Atria Sr. Living Group*, 887 F. Supp. 2d 503, 512 (S.D.N.Y. 2012).  Plaintiff receives protection even if he was not entitled to the reasonable accommodation, as long as he made his request in good faith.

(a)      **Defendant had knowledge of Mr. LeBlanc's requests.**

Plaintiff is not required to show that particular people had knowledge as long as he can show "corporate knowledge" of his request for accommodation.  Mr. LeBlanc made his manager at the time, Mike Ferony, aware of his conditions and of the fact that he wanted to transfer to a location closer to home.  *See Quinn Aff*. ¶¶ 5–8.  Besides, Beverly Riddick, the human resources employee, stated in her deposition that once plaintiff made request to the attention of Messrs. Quinn and Ferony, they were under the obligation to follow up with human resources.  This means that once Mr. LeBlanc informed his managers, it was not his responsibility to follow up on his claim.  It was Defendant's and Defendant failed.  Nevertheless, Mr. LeBlanc did follow up on his request with human resources.  Christine Rowan, another human resources employee, stated in her deposition that she has no records of accommodation requests, which means that Defendant is not qualified to assert that Mr. LeBlanc purportedly failed to make a formal request.  *Rowan Dep.* 100:4–16.   The fact that Mr. Minesinger was not aware of Mr. LeBlanc's

accommodation requests does not mean that Mr. LeBlanc did not make Defendant aware.  He did including telling Yvonne Quinones, Dennis Quinn, Mike Ferony, *et alia*.

        **(b)**        **Material adverse change.**

An adverse employment action is a "material adverse change in the terms and conditions of employment."  *Sanders v. N.Y.C. HR Admin.*, 361 F.3d 749, 755 (2d Cir. 2004).  Such an action is "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Galabya* at 640. Materially adverse changes encompass "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." *Id*.  "Actions are materially adverse if they are harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination. *Hicks v. Baines*, 593 F.3d 159, 165 (2d Cir. 2010).

In the instant case, Defendant was clearly aware of Mr. LeBlanc's situation and requests. Mr. LeBlanc made continuous requests for accommodation for a period of three (3) years before he was summarily terminated.  Throughout the last three years of Mr. LeBlanc's employment at UPS, he was subject to two (2) different adverse employment actions.  First, UPS unilaterally decided to demote Mr. LeBlanc and transfer him to a new work location and to change his day shifts to night shifts.  This change entailed a high amount of stress on Mr. LeBlanc and exacerbated his already existing health problems and created new ones including insomnia. *LeBlanc Dep*. 116:13–117:16.  Mr. LeBlanc suffered another adverse employment change when he was summarily terminated.

        **(a)**        **Causation.**

Under the NYCHRL, the fourth factor necessary to satisfy the *prima facie* case of a retaliation claim is that there is a causal connection between the protected activity and the

adverse employment action.  The casual connection requirement can be established through a temporal proximity leading to the adverse employment change.  *Ugactz v. UPS*, 10 CV 1247 (MKB), 2013 WL 1232355 (E.D.N.Y. Mar. 26, 2013).

Mr. LeBlanc had positive reviews up until three weeks before he was fired ("strong performer").  He never had a bad performance review. The first request that Mr. LeBlanc made was in February 2008 when he brought a copy of a doctor's note to Yvonne Quinones who worked as a Human Resources supervisor.  *LeBlanc Dep*. 115:18–20.  The note states that Mr. LeBlanc should be moved to a location closer to his home and with less traffic on the commute.  *Id*., 117:10–16.  Indeed, the commute from Plaintiff's home to work was at least two (2) hours per day and sometimes two and one-half (2.5) hours.  *LeBlanc Aff*. ¶¶ 5–25.  Plaintiff followed up with Yvonne Quinones over the course of several weeks by telephoning her to see how things were moving.  *Id*.  She told him that they were "working on it."  *Id*.; *LeBlanc Dep*. 126:4–15; 129:14–20; 130:15–21.  Around February 2008, Plaintiff also gave the letter to Mr. Quinn and discussed it with him.  *Quinn Aff*. ¶ 5.  In March 2009, plaintiff gave his doctor's note to Rita Turcios, who worked in Defendant's human resources department.  *LeBlanc Dep*. 132:18–133:10.  She inquired about his request about a month later.  *Id*. 139:10–16.  Nothing changed for Mr. LeBlanc.

In 2010, Mr. LeBlanc talked to Mike Ferony about his request for accommodation.  *Id*. 143:11–22.  Nothing changed for Mr. LeBlanc.  In February 2011, Mr. LeBlanc again approached Ms. Turcios about the matter.  *Id*. 141:4–8.  Nothing changed for Mr. LeBlanc.  Again in 2011, Mr. LeBlanc complained to Pat Sheppard and Dennis Flood.  *Id*. 147:12–17; 148:17–149:7.  Nothing changed for Mr. LeBlanc.

The temporal proximity between his termination and his continuous requests for accommodation underscore the real reasons behind his abrupt termination and illustrate pretext.

### 2.    Defendant failed to establish a non-retaliatory reason for terminating Mr. LeBlanc.

The proffered reason for Mr. LeBlanc's termination is purely pretextual and was not based on tangible facts in view of Mr. LeBlanc's exemplary work achievements.  In some instances, Defendant alleges that Mr. LeBlanc was fired for dishonesty.  *LeBlanc Dep*. 107:12–14.  Other times they purport that they "believe" that Mr. LeBlanc violated "company policy," or "integrity."  *Minesinger Dep*. 97:6–12.  One time, Defendant claimed that "he was terminated for, I believe the term[ination] was for falsification—I'm sorry—not falsification . . . I want to say conduct unbecoming."  *Riddick Dep*. 42:24–43:4.  Defendant may also believe that Mr. LeBlanc's termination "was based on those packages being left at the mailbox . . . ."  *Id*. 43:7–9.

The bar for pretext is easily attained with all Defendant's multifarious and mutually exclusive excuses.  "[I]n order to prove pretext, it is incumbent on the plaintiff to produce evidence from which a reasonable jury could: (1) disbelieve defendant's proffered reasons for the adverse employment action; and (2) infer that [the defendant's] real reason was unlawful . . . discrimination."  *Ramos v. Marriott Int'l*, 134 F. Supp. 2d 328, 343 (S.D.N.Y. 2001) (citing *Reeves v. Sanderson Plumbing Prods*., 530 U.S. 133, 146–48, 120 S. Ct. 2097, 2108–09 (2000).  Plaintiff welcomes a New York City jury's attentive examination of Defendant's purported reasons for Mr. LeBlanc's termination.

Defendant alleges that the person who purportedly made the decision to terminate Mr. LeBlanc, *i.e*., Mr. Minesinger, was not aware of Mr. LeBlanc's disability.  This argument is simply irrelevant and cannot be used to show that there was no disability discrimination or no adverse employment action taken against the Plaintiff.  First, it was not Mr. LeBlanc's

responsibility to tell Mr. Minesinger about his disability.  That was the responsibility of Mr. LeBlanc's superiors, who were already completely aware of his situation.  *Quinn Aff.* ¶¶ 2–9. Moreover, Mr. Minesinger and Mr. LeBlanc were not working in the same facility and had no professional contact with one another until Mr. LeBlanc's termination.  After reading the *Quinn Aff.*, Ms. Riddick, one of Defendant's witnesses pursuant to FED. R. CIV. P. 30(b)(6), testified that Mr. Ferony was under the obligation to follow up on the matter that Mr. LeBlanc brought to him, namely his need for accommodation.  *Riddick Dep.* 67:4–69:5.  Ms. Riddick stated that "[i]n this context, if Mr. LeBlanc brought this to Mr. Ferony's attention, then there is an obligation to not only follow up with human resources, but, again, if there was some unclarity to seek other guidance."  *Id.* 70:7–11.  Ms. Riddick's testimony clearly indicates that UPS had not only a duty, but an "obligation" to follow up on Mr. LeBlanc's request for accommodation and that ignoring his request was a professional mistake on their part.  Plaintiff's request for accommodation was continuously denied and altogether ignored without any justification.  The many different stories put forward by Defendant regarding their termination of Mr. LeBlanc make just two things clear: (i) pretext and (ii) disputed material facts between the Parties and even amongst Defendant's representatives prevent summary judgment.

### III.   <u>CONCLUSION</u>

For all of the foregoing reasons, Plaintiff respectfully requests that a jury decide his claims and that the Court deny Defendant's Motion for Summary Judgment in its entirety.

Dated: New York, New York          Respectfully submitted by:
      October 4, 2013                   THE HARMAN FIRM, PC
                                        *Counsel for Plaintiff*

                              _____s/_____
                              Walker G. Harman, Jr. [WH-8044]
                              200 West 57th Street, Suite 900
                              New York, New York 10019
                              (212) 425-2600
                              wharman@theharmanfirm.com