UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| RICHARD LEBLANC, | : | Case No. 1:11-cv-06983 (KPF) |
| Plaintiff, | : | |
| v. | : | <u>(Document Filed Electronically)</u> |
| UNITED PARCEL SERVICE, INC., | : | |
| Defendant. | : | |
| | : | |

# DEFENDANT UNITED PARCEL SERVICE, INC.'S BRIEF IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

DAY PITNEY LLP
*Attorneys for Defendant*
*United Parcel Service, Inc.*
7 Times Square
New York, NY 10036
(212) 297-5800

On the brief:

Heather Weine Brochin, Esq.
Joseph C. Nuzzo, Jr., Esq.

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ..................................................................................................1
LEGAL ARGUMENT .................................................................................................................1
    I.    Plaintiff Cannot Demonstrate a Prima Facie Case of Disability Discrimination.............1
          A.  Plaintiff Was Not Demoted ................................................................................. 1
          B.  Plaintiff Has No Evidence that his Termination Was Because of His Disability....3
          C.  Plaintiff also Fails to Provide Any Evidence of Pretext .........................................4
          D.  Plaintiff's Opposition Seeks To Avoid UPS's Legitimate Non-Discriminatory Reason for Terminating Him...............................................................................5
          E.  Plaintiff's Disparate Treatment Claim Is Meritless ...............................................6
    II.   Plaintiff's Failure To Accommodate Claim Is Still Defective ......................................7
          A.  Plaintiff Does Not Rebut the Fact that He Never Identified a Suitable Job to Which He Could Have Transferred ......................................................................8
    III.  Plaintiff's Retaliation Claim Lacks Protected Activity and Causation ..........................8
    IV.  Plaintiff's Attempts to Relitigate Discovery Issues Should Be Disregarded.................10
CONCLUSION............................................................................................................................10

84958749.7

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Albuja v. NBC Universal*,
   851 F. Supp. 2d 599 (S.D.N.Y. 2012) ..................................................................................2

*Brice v. New York State Dep't of Health*,
   901 N.Y.S.2d 898 (N.Y. App. Div. 2009) ............................................................................8

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ..............................................................................................................3

*DiBrino v. VA*,
   118 F. App'x 533 (2d Cir. 2004) ..........................................................................................2

*EEOC v. Bloomberg, L.P.*,
   2013 U.S. Dist. LEXIS 128388 (S.D.N.Y. Sept. 9, 2013) ....................................................9

*Galabya v. N.Y.C. Bd. of Educ.*,
   202 F.3d 636 (2d. Cir 2000) .............................................................................................1, 2

*Guary v. Upstate Nat'l Bank*,
   618 F. Supp. 2d 272 (W.D.N.Y. 2009) .................................................................................3

*Hanna v. N.Y. Hotel Trades Council*,
   851 N.Y.S.2d 818 (N.Y. Sup. Ct. 2007) ...............................................................................2

*Hart v. New York Univ. Hosps. Ctr.*,
   2011 U.S. Dist. LEXIS 116538 (S.D.N.Y. Oct. 7, 2011) .....................................................8

*Hofheinz v. Discovery Commc'ns, Inc.*,
   2001 U.S. Dist. LEXIS 14752 (S.D.N.Y. Sept. 20, 2001) ....................................................6

*Hrisinko v. N.Y.C. Dep't of Educ.*,
   369 F. App'x 232 (2d Cir. 2010) ..........................................................................................1

*Kassner v. 2nd Ave. Delicatessen, Inc.*,
   496 F.3d 229 (2d Cir. 2007) .................................................................................................2

*Krikelis v. Vassar Coll.*,
   581 F. Supp. 2d 476 (S.D.N.Y. 2008) ..................................................................................7

*Murray v. Visiting Nurse Servs.*,
   528 F. Supp. 2d 257 (S.D.N.Y. 2007) ..................................................................................9

*Neidich v. Estate of Neidich*,
 222 F. Supp. 2d 357 (S.D.N.Y. 2002) ..........................................................................6

*Nolley v. Swiss Reinsurance Am. Corp.*,
 857 F. Supp. 2d 441 (S.D.N.Y. 2012), *aff'd* 2013 U.S. App. LEXIS 13181 (2d Cir. June 27, 2013) ............................................................................................................................10

*Pearson v. Unification Theol. Seminary*,
 785 F. Supp. 2d 141 (S.D.N.Y. 2011) ..........................................................................3

*Trans-Orient Marine Corp. v. Star Trading & Marine, Inc.*,
 925 F.2d 566 (2d Cir. 1991) .........................................................................................5

**Statutes**

N.Y. City Admin. Code § 8-502(d) .......................................................................................2

**Other Authorities**

Paul A. Race & Seth M. Dornier, *ADA Amendments Act of 2008: The Effect on Employers and Educators*, 46 Willamette L. Rev. 357 (2009) ..........................................................7

## PRELIMINARY STATEMENT

Rather than set forth evidence to support his baseless allegation that his termination was discriminatory, plaintiff's opposition focuses on irrelevant allegations about discovery matters and tries to obfuscate the issues before the Court. Perhaps that is because the only "evidence" plaintiff has are his conclusory allegations and a self-serving sham affidavit that should be disregarded by the Court. The actual evidence and testimony demonstrate that the only adverse action taken against plaintiff – his discharge – was in response to his admitted misconduct – falsifying employee signatures on training rosters and abandoning U.S.P.S. packages on the side of the road in the middle of the night. Among other defects, plaintiff's disparate treatment claim lacks any evidence that a similarly-situated, non-disabled individual was treated better, and his retaliation claim lacks any evidence of causation because the actual decision-maker knew nothing about plaintiff's alleged disability or accommodation requests. Furthermore, despite claiming that he needed a transfer as an accommodation, plaintiff never identified a single available position to which he could have transferred prior to his termination. Summary judgment is warranted in this matter.

## LEGAL ARGUMENT

**I. Plaintiff Cannot Demonstrate a *Prima Facie* Case of Disability Discrimination.**

**A. Plaintiff Was Not Demoted.**

In a desperate attempt to set forth a *prima facie* disability discrimination claim, plaintiff argues, for the first time, that he was "demoted" in 2008 following his heart attack. This new allegation is untrue and time barred. An adverse action is defined as a "'materially adverse change' in the terms and conditions of employment." *Hrisinko v. N.Y.C. Dep't of Educ.*, 369 F. App'x 232, 235 (2d Cir. 2010). It must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 640 (2d. Cir 2000) (citations omitted) (abrogated on other grounds). Examples include "termination of

employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished responsibilities, or other indices . . . unique to a particular situation." *Id.* (citations omitted); *Hanna v. N.Y. Hotel Trades Council*, 851 N.Y.S.2d 818, 824-26 (N.Y. Sup. Ct. 2007) (applying *Galabya* adverse employment action definition to NYCHRL claims).

Where employers have changed employees' hours, courts have found that no adverse employment action exists. *See, e.g., id.* at 825 (granting summary judgment on NYCHRL discrimination and retaliation claims because, *inter alia*, employee showed no adverse employment action); *DiBrino v. VA*, 118 F. App'x 533, 535 (2d Cir. 2004) ("shift change, without anything else,… insufficient to establish an adverse employment action") (citations omitted); *Albuja v. NBC Universal*, 851 F. Supp. 2d 599, 609 (S.D.N.Y. 2012) (scheduling plaintiff to work overnight shifts to accommodate request to work forty hours is not an adverse employment action).

Here, UPS transferred plaintiff from an On Road Supervisor position to a Preload and Dispatch Supervisor ("PDS") position, which carried the same pay but a one to two hour *shorter* workday. (LeBlanc Dep. 38:4-16; 49:3-9; 48:14-5). Plaintiff admittedly could not have continued his former role because it required, as an essential job function, driving package cars for approximately ninety percent of the day. (*Id*. 23:21-3). The medication plaintiff took at the time made him lightheaded and, as a result, unable to keep his DOT card. (*Id*. 38:22-39:23).[1]

---

[1] Thus, plaintiff was not qualified for the On Road Supervisor role once he lost his DOT card. In addition, as the transfer took place in May 2008, it is clearly time barred because plaintiff did not file the original Complaint until October 5, 2011. Under the NYCHRL, discrimination claims are subject to a three year statute of limitations. N.Y. City Admin. Code § 8-502(d); *Kassner v. 2nd Ave. Delicatessen, Inc.*, 496 F.3d 229, 238 (2d Cir. 2007).

84958749.7

### B. Plaintiff Has No Evidence that his Termination Was Because of His Disability.

As set forth in the moving brief, plaintiff cannot establish a *prima facie* case of disability discrimination because he has no *evidence* to suggest that he suffered an adverse employment action because of his disability. *See Pearson v. Unification Theol. Seminary*, 785 F. Supp. 2d 141, 163 (S.D.N.Y. 2011) (citing *Giordano v. City of N.Y.*, 274 F.3d 740, 747 (2d Cir. 2001)).[2] Plaintiff states that "evidence also shows that Plaintiff's employment was terminated because he made several requests for accommodation over an extended period of time." (Opp. Br. at 6). In support of this conclusory statement, plaintiff cites to ¶ 37 of the self-serving affidavit he submitted with his opposition papers, which actually provides no evidence that plaintiff was terminated *because of* his alleged disability. Instead, ¶ 37 reads: "I never denied re-creating the safety roster, which had been lost by the Safety Supervisors who had been present for the hazmat training of all employees and were able to confirm that they had all been present." (LeBlanc Aff., ¶ 37). This actually bolsters the legitimate, non-discriminatory reason for plaintiff's termination.

As set forth in the moving brief, where the movant is the defendant, it has no obligation to produce evidence negating the plaintiff's case; instead, the defendant merely has to point to the lack of any evidence supporting the plaintiff's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). Here, plaintiff's failure to articulate any evidence to satisfy the fourth prong of his *prima facie* case requires the dismissal of his disability discrimination claim.[3]

---

[2] Plaintiff also fails to put forth any evidence that he was disabled at the time of his 2011 termination. Rather, he relies upon his doctor's 2008 letter regarding a 2007 heart attack and symptoms he was experiencing in 2008. These temporary impairments are not evidence of a disability in 2011 under the NYCHRL. "In order to state a claim of discrimination based on disability, . . . [the plaintiff's alleged] impairment's impact must [] be permanent or long-term." *Guary v. Upstate Nat'l Bank*, 618 F. Supp. 2d 272, 274-75 (W.D.N.Y. 2009) (internal citations and quotations omitted) (dismissing federal and state disability discrimination claims because plaintiff's broken ankle was "not a disability for purposes of the ADA or the parallel New York statute").

[3] Rather than provide evidence to support his allegations, plaintiff identifies irrelevant factual distinctions between his allegations and the facts underlying cases cited by UPS to set forth the standards for NYCHRL discrimination claims.

84958749.7

### C. Plaintiff also Fails to Provide Any Evidence of Pretext.

Incredibly, plaintiff argues as evidence of pretext the fact that he received positive performance reviews and "a salary increase three (3) weeks prior to his termination." (Opp. Br. at 8). Rather than support his claims, these facts effectively eviscerate any conceivable claim that UPS discriminated against plaintiff because of his disability. Plaintiff readily admits that for the entire time he was allegedly requesting accommodations – over the course of three years according to plaintiff – he continually received positive reviews and raises. Only when plaintiff engaged in severe misconduct, to which he admitted in handwritten, sworn statements, did UPS terminate his employment. There is no evidence that this discharge decision was pretextual.

In another desperate attempt to establish pretext, plaintiff unsuccessfully attempts to create confusion regarding the reasons for his termination by comparing the testimony of Daniel Minesinger - the actual decision-maker - with Beverly Riddick - a UPS witness offered to testify about "UPS's policies as they relate to disability discrimination," and not the termination decision. (*Id*. at 11; Brochin Supp. Aff., Ex. 1). Thus, Ms. Riddick's understanding of plaintiff's termination is irrelevant, though it is not inconsistent with the testimony of Mr. Minesinger. Ms. Riddick's testimony merely reflects that she was unsure as to the formal classification for plaintiff's termination in the UPS computer system. (Riddick Dep. 43:11-14). Mr. Minesinger testified consistently that the decision to terminate plaintiff was based on both his admitted falsification of training records and because plaintiff abandoned U.S. Postal Services packages next to a mailbox in the Bronx in the middle of the night. (Minesinger Dep. 68:13-69:2). There is no evidence that this decision was pretextual, and Mr. Minesinger did not even have any knowledge of plaintiff's alleged disability or alleged transfer requests. (*Id.* 120:20-121:3).

84958749.7

### D. Plaintiff's Opposition Seeks To Avoid UPS's Legitimate Non-Discriminatory Reason for Terminating Him.

The opposition attempts to avoid the admitted, severe misconduct in which plaintiff engaged and which resulted in his termination. As set forth in the moving brief, UPS terminated plaintiff for violating UPS policy after he (1) admittedly falsified OSHA-required hazardous material training records and examinations and (2) dropped off U.S.P.S. packages next to a post office mailbox in the Bronx at approximately 2:00 A.M. (*Id.* 97:11-12, 119:6-13, 68:16-25). Plaintiff admitted in handwritten statements to engaging in both acts of misconduct. (Brochin Aff. Exhs. H and I). He admits that he "re-created" safety training rosters by signing employees' names and trying to make the handwriting look different. (LeBlanc Dep. 93:13-19; LeBlanc Aff., ¶ 37; Pl. 56.1 Response, ¶¶ 31 and 33). He only objects to the term "forged" to characterize his misconduct. (*Id.*).[4] Plaintiff also admits to leaving 75 to 100 U.S.P.S. packages on the street rather than at the post office. (LeBlanc Aff., ¶ 38).

For the first time, plaintiff claims that he "was directed to place" the packages there by his manager Dennis Flood. (*Id.*, ¶ 38; Pl. 56.1 Response, ¶ 35). However, plaintiff testified at his deposition that his supervisor did *not* tell him what to do with the packages, only that he asked plaintiff to get the packages out of the UPS facility. (LeBlanc Dep. 59:23-60:2). Plaintiff's statement to the contrary submitted in his opposition papers is nothing more than a sham affidavit that should be disregarded by the Court.[5] *Trans-Orient Marine Corp. v. Star Trading &*

---

[4] Plaintiff also claims that he was "forced" to issue these handwritten statements. (Pl. 56.1 Response, ¶30). However, he testified at his deposition that he was told to tell the truth in the statements and was *not* told what he should write. (LeBlanc Dep. 97:18-22).

[5] Plaintiff's attempts to misguide the Court are not limited to his affidavit as he also misstates the basis for a quotation in his Preliminary Statement. Plaintiff claims that "Reasonable accommodation lends itself to a binary yes or no: 'you can't have it both ways,'" (Opp. Br. at 1 (citing Paul A. Race, J.D., M.D. & Seth M. Dornier, J.D., *ADA Amendments Act of 2008: The Effect on Employers and Educators*, 46 Willamette L. Rev. 357, 388 (2009) (citations omitted)). The Race & Dornier law review article, however, does not argue that reasonable accommodation is subject to "a binary yes or no," as plaintiff suggests. The quotation addresses whether or not a person is disabled: "you can't have it both ways - am I disabled or not? If I am, then the ADA should have been there to protect me. If I'm not, then I should be

84958749.7

*Marine, Inc.*, 925 F.2d 566, 572 (2d Cir. 1991) ("The rule is well-settled in this circuit that a party may not, in order to defeat a summary judgment motion, create a material issue of fact by submitting an affidavit disputing his own prior sworn testimony."); *Neidich v. Estate of Neidich*, 222 F. Supp. 2d 357, 368 (S.D.N.Y. 2002) (accord); *Hofheinz v. Discovery Commc'ns, Inc.*, 2001 U.S. Dist. LEXIS 14752, at *5 (S.D.N.Y. Sept. 20, 2001) (relying on sham affidavit doctrine and holding that "Plaintiff's recent statement that her deposition testimony had been made 'without her being totally certain of the facts' is not sufficient to create a material issue of fact . . . ."). This summary judgment motion must be judged on plaintiff's sworn testimony and the evidence adduced during discovery, not on plaintiff's affidavit, which was prepared by and at the direction of his counsel, and contradicts much of the record evidence. Plaintiff's desperation in submitting this contradictory testimony only underscores the veracity of UPS's legitimate reasons for plaintiff's termination.

### E. Plaintiff's Disparate Treatment Claim Is Meritless.

Plaintiff's disparate treatment claim is frivolous because he cannot even meet the standard that he puts forth in his opposition brief. Plaintiff admits that he must show, about his comparator, that "the conduct for which the employer imposed discipline was of comparable seriousness." (Opp. Br. at 13 (citations omitted)). Nowhere in plaintiff's opposition brief, however, is any recitation of comparable conduct by someone who is not disabled. Plaintiff names only one other individual in his brief – John Argiento – who was similar to plaintiff only in that they "were both supervisors, and they reported to the same person." (*Id.* at 13). Plaintiff offers no evidence as to whether or not Mr. Argiento is disabled or has ever requested an accommodation, or as to the type of conduct Mr. Argiento allegedly committed. This is because plaintiff knows that Mr. Argiento did not engage in the same misconduct that he did. (*See* UPS's

---

working ... at GM right now... . Because I'm adapted so well to living with muscular dystrophy, the Court

-6-

moving brief at 13).⁶ Accordingly, plaintiff has failed to demonstrate any non-disabled, similarly situated individual who engaged in the same misconduct but was not terminated.

**II.     Plaintiff's Failure To Accommodate Claim Is Still Defective.**

To avoid the reality that he received the accommodation he needed from UPS, plaintiff attempts to paint that accommodation as a demotion. As set forth above, that argument is nonsense. The facts are that in May 2008, three months after his physician wrote him a letter, UPS transferred plaintiff to the PDS role, which carried the same salary but gave him up to two more hours daily to exercise. (LeBlanc Dep. 41:17-42:10; 16:20-17:5; 46:18-21; 48:14-5).

In his opposition, plaintiff admits that he was transferred; that his workday was reduced as a result; that his doctor's letter does not reference at all any "stress" associated with his commute or with working at night; and even that he failed to use the additional time each day to heed his doctor's advice and exercise. (Pl. 56.1 Response, ¶¶ 11, 13-4, 17, and 19). The letter *only* states that a reduction in plaintiff's commute would allow him more time to exercise. (*Id.*, ¶ 18). Plaintiff's transfer provided him the time he needed. Even if the letter could have constituted an accommodation request, which UPS denies (*see* D. Br. at 16-17), UPS was not obligated revisit the transfer to provide plaintiff with an accommodation of his choice. *Krikelis v. Vassar Coll.*, 581 F. Supp. 2d 476, 486-87 (S.D.N.Y. 2008) ("An employer is not required 'to provide every accommodation a disabled employee may request, as long as the accommodation provided is reasonable.'") (quoting *Fink v. N.Y.C. Dep't of Pers.*, 53 F.3d 565, 567 (2d Cir. 1995)).

---

said I wasn't protected by the ADA." 46 Willamette L. Rev. at 388.

    ⁶ UPS notes that plaintiff claims in his affidavit that Mr. Argiento also re-created safety rosters in the same manner that he did. (LeBlanc Aff., ¶¶ 34-5). This allegation directly conflicts with plaintiff's deposition testimony in which he testified that Mr. Argiento did *not* re-create employee's names on rosters or take tests in their names. (LeBlanc Dep. 254:25-260:2). It also conflicts with his admission in his Rule 56.1 response that he has no personal knowledge of the conduct of the other supervisors in connection with the audit investigation. (Pl. 56.1 Response, ¶ 34). Thus, again, plaintiff's sham affidavit should be disregarded by the Court. *See supra*, at II.B.

### A. Plaintiff Does Not Rebut the Fact that He Never Identified a Suitable Job to Which He Could Have Transferred.

As set forth in the moving brief, where the requested accommodation is a transfer, the plaintiff must identify a suitable position to which he could have transferred. *See Hart v. New York Univ. Hosps. Ctr.*, 2011 U.S. Dist. LEXIS 116538, at *13 (S.D.N.Y. Oct. 7, 2011) (under the NYCHRL, plaintiff "must so establish that the request for a transfer as accommodation was reasonable and that a suitable vacancy existed at the time the request was made"). Plaintiff has set forth *no evidence* of any open position during the time that he was allegedly requesting accommodations. At his deposition, plaintiff testified as follows:

> Q: Do you have any knowledge that there were any open operations supervisor jobs at [the Brookfield or Watertown] facilities in 2010 or 2011?
> A: No.
> Q: So what's the basis for your suggesting that you could have transferred there?
> A: That they were closer.
> Q: Did you ever check online to see if there were open positions in advertisements?
> A: No.

(LeBlanc Dep. 151:10-19). Plaintiff's brief does not attempt to rebut this, but he states in his affidavit that "there were open positions in both Watertown and Brookfield." (LeBlanc Aff., ¶ 18). This is yet another instance of a sham affidavit, in direct conflict with his sworn deposition testimony, that should be disregarded by the Court. *See supra*, at II.B. Accordingly, because plaintiff has no evidence of an available position closer to his home, his failure to accommodate claim must fail. *See Brice v. New York State Dept. of Health*, 901 N.Y.S.2d 898, 898 (N.Y. App. Div. 2009) ("Plaintiff had the opportunity to conduct discovery to identify an available 'vacant funded position' and failed to show that such vacancy existed during the relevant time period.").

### III. Plaintiff's Retaliation Claim Lacks Protected Activity and Causation.

Plaintiff has no evidence that he engaged in any protected activity because he never made any complaints of discrimination nor did he file any internal complaints with UPS. (*See* D. Br. at

20-24). Plaintiff's only alleged protected activity was to provide the 2008 doctor's letter to various UPS employees, which is not protected activity. Plaintiff argues to the contrary in his brief (Opp. Br. at 18), but references and cites authority only addressing retaliation claims under the ADA and other federal laws. The definition of protected activity under the NYCHRL does not include the conduct in which plaintiff allegedly engaged. (*See* D. Br. at 21-22).

Plaintiff also cannot rebut the lack of evidence of causation between any alleged protected activity and his termination. It is plaintiff's burden to prove that the decision-maker had knowledge of the alleged protected activity. *Murray v. Visiting Nurse Servs.*, 528 F. Supp. 2d 257, 271 (S.D.N.Y. 2007) (granting summary judgment where "plaintiff has failed to present even circumstantial evidence regarding (1) the decisionmakers' knowledge of plaintiff's protected activities . . ."). As set forth above, Mr. Minesinger had no knowledge of plaintiff's alleged disability or any alleged transfer requests. (Minesinger Dep. 120:20-121:3). Plaintiff argues, without citation to any authority, that he only needs to show "corporate knowledge" of the protected activity. Plaintiff either misunderstands or misstates the applicable law. "Corporate knowledge" only can show that the protected activity was known to the employer, not to demonstrate causation. *See EEOC v. Bloomberg, L.P.*, 2013 U.S. Dist. LEXIS 128388, at *92-93 (S.D.N.Y. Sept. 9, 2013) (noting plaintiffs "seem not to have read all of the case upon which they rely" because while "corporate knowledge may satisfy the second *prima facie* case prong (employer's knowledge), the lack of evidence indicating knowledge of particular individual agents can doom a plaintiff's ability to show the fourth element (causation).") (citing *Gordon v. N.Y. City Bd. Of Educ.*, 232 F.3d 111, 113-4 (2d Cir. 2000)).[7]

---

[7] Plaintiff also argues that there was temporal proximity of a few months between his last alleged accommodation requests and his termination. As set forth in the moving brief, this is insufficient to carry plaintiff's burden. *See Murray*, 528 F. Supp. 2d at 275 ("district courts within the Second Circuit have consistently held that the passage of two to three months between the protected activity and the adverse employment action does not allow for an inference of causation"). In any event, here, an intervening event – plaintiff's admitted misconduct – destroys any inference of causation that could have existed due

84958749.7

**IV.     Plaintiff's Attempts to Relitigate Discovery Issues Should Be Disregarded**.

Perhaps because he recognizes his claims are meritless, plaintiff spends much of his opposition seeking to relitigate and distort certain discovery issues that arose and were settled by the Court. For example, plaintiff claims that UPS "never completed a search – or even tried to search – for responsive documents… [as to] whether or not Mr. LeBlanc requested accommodations." (Opp. Br. at 2). In support of this vexatious statement, plaintiff cites to the testimony of one of UPS's Rule 30(b)(6) witnesses, Christine Rowan, who was offered to testify about "UPS's policies as they relate to the provision of reasonable accommodations to individuals with disabilities." (Brochin Supp. Aff., Ex. 1). However, the cited testimony has nothing to do with any search for records regarding plaintiff's alleged accommodation requests, but instead about Ms. Rowan's knowledge of the existence of a hypothetical record plaintiff's counsel asked her about. (Rowan Dep. Tr., 100:4-16). Plaintiff's counsel never actually asked Ms. Rowan if she searched for any accommodation requests from plaintiff. Ms. Rowan provided a declaration with UPS's moving papers regarding her efforts to locate any accommodation requests or documents involving plaintiff; there were none. (*See* Rowan Dec., ¶ 4). Plaintiff's attempts to distort her testimony are indicative of his desperation to save his claims.

## CONCLUSION

For these reasons and for the reasons set forth in the moving brief, UPS respectfully requests that the Court grant its motion for summary judgment.

Date: October 18, 2013                                                  By:   s/Heather Weine Brochin
                                                                                    Heather Weine Brochin

---

to temporal proximity. *See Nolley v. Swiss Reinsurance Am. Corp.*, 857 F. Supp. 2d 441, 461 (S.D.N.Y. 2012) ("An intervening event between the protected activity and the adverse employment action may defeat the inference of causation where temporal proximity might otherwise suffice to raise the inference."), aff'd 2013 U.S. App. LEXIS 13181 (2d Cir. June 27, 2013).

84958749.7